James H. DORRALL, Petitioner,

v.

**DEPARTMENT OF THE ARMY, Respondent.**

No. 01–3309.

United States Court of Appeals, Federal Circuit.

Sept. 6, 2002.

Yolonda D. Lofton, Law Offices of Errol R. Thompson, of Silver Spring, MD, for petitioner.

John C. Einstman, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for respondent. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Franklin E. White, Assistant Director.

Before NEWMAN, DYK, and PROST, Circuit Judges.

DYK, Circuit Judge.

James H. Dorrall petitions for review of a final decision of the Merit Systems Protection Board ("Board") dismissing his appeal for lack of jurisdiction. *Dorrall v. Dep't of the Army*, DC–0752–01–0308–I–1 (Apr. 10, 2001) (Initial Decision). We affirm.

## BACKGROUND

On August 2, 2000,[1] Dorrall retired from his position as a GS–14 procurement analyst with the United States Army Materiel Command. Before his retirement, Dorrall's first line supervisor was Edwin Cornett, and his second line supervisor was Sandra Rittenhouse.

On May 3, Dorrall filed an Equal Employment Opportunity ("EEO") complaint against Rittenhouse, alleging that he had not been selected for a GS–15 position because he was discriminated against on the basis of his race, color, and sex. On June 26, Carole Page, Dorrall's contact at the EEO office, sent an e-mail message to Dorrall, informing him that an investigator would conduct an on-site investigation into his discrimination complaint on August 3, including a hearing at which testimony would be received. The stated purpose of the message was to determine if the addressees of the e-mail would be available on August 3. On June 28, Dorrall sent an e-mail message to Page, stating that August 3 was not a good date and that he would let her know within a week whether he would be available on August 3. Subsequently, on July 3, Dorrall sent another short e-mail message, indicating that he would not be available on August 3. On July 6, Page responded that the investigation was still scheduled for August 3 because "the agency is responsible for conducting the investigation in a timely fashion and no one has provided a compelling reason for not participating." E-mail from Carole Page, EEO Office, to James Dorrall (July 6, 2000). Although Dorrall had previously indicated his unavailability, on July 20, Page informed Dorrall that the investigation was still scheduled for August 3. Apparently, some time after the investigative hearing was scheduled for August 3, Dorrall requested leave for that date. This leave was approved on, or a few days before, July 27 by Cornett. Dorrall never provided an explanation for his leave request, although the parties admit that it is not the policy of the agency to require an explanation.

A formal mediation was scheduled for July 24 to attempt to settle Dorrall's EEO complaint. The parties signed a negotiated settlement agreement resolving the EEO complaint on July 31 and August 1.

1. All of the events described occurred in 2000, unless otherwise indicated.

After signing the settlement agreement, Dorrall told Cornett that he would be working on August 3.

A memorandum dated July 31 and prepared by Cornett described a discussion of the same date with Dorrall (referred to as "Jim" below) regarding his need for personal leave:

> On 31 July I called Mike Gallagher in to ask him to attend the open CAS conference with industry and Government on 2–3 Aug 00 as Jim had personal leave that he had to take on 3 Aug. I asked Mike, as he was the backup for Jim, to cover both days and Jim would go along on 2 Aug. I told him to get information from Jim on [the] meeting.
>
> Jim came in shortly after I asked Mike to attend and stated that he could cover both days as he had reached a settlement. I said, Jim, I thought you had to take personal leave and it [sic] had it planned for some time. I said, Jim, you told me last week that you had to take personal leave and it had nothing to do with the hearing. I told him this looked really bad for both of us, as we made a big deal with legal and the DCS last week. He said its [sic] nothing, don't worry about it, you know personal reasons for leave can change and no one can prove anything. I said, OK, Jim, this doesn't sound good, you probably should take the day off. He said, they can't prove anything [and] personal circumstances can change.

Notes to Petitioner's file drafted by Edwin Cornett (July 31, 2000).

On August 1, Cornett mentioned to Linda Mills, legal counsel for the department, that he thought Dorrall had avoided the hearing on purpose and lied to Cornett and Rittenhouse about his need for leave in order to pressure them into settling his complaint. Mills recommended discipline ranging from a reprimand to a ten-day suspension for deliberately deceiving a supervisor to avoid the hearing. Consequently, Cornett and Rittenhouse decided to meet with Dorrall.

On August 2, Rittenhouse and Cornett met with Dorrall. During this meeting, Dorrall's supervisors questioned him on the reason that he canceled his request for leave. Rittenhouse accused Dorrall of taking leave to avoid the hearing and impede the investigation, and also informed Dorrall that she was considering taking disciplinary action ranging from a letter of reprimand to a ten-day suspension. Rittenhouse also questioned Dorrall in a raised tone of voice about ordering the most expensive item on the menu for his birthday luncheon, requesting reimbursement on a one dollar error in a travel voucher, and filing a workers' compensation claim including whether there were any witnesses to his accident.

After the meeting, Dorrall initiated his retirement, which was effective August 2. When Dorrall approached Cornett to obtain Cornett's signature on his final retirement papers, Dorrall was asked about his reason for retiring. Dorrall responded by stating his disbelief that he would be subject to a ten-day suspension and stating that there was no proof he attempted to avoid the hearing. Cornett told Dorrall that Rittenhouse and he had not decided whether Dorrall would be punished, and in any event, he would not be punished for the full ten days. Regardless, Cornett thought that Dorrall was doing a good job, that he should rethink his retirement decision, and that this was not a good reason to retire.

On August 8, Rittenhouse wrote Dorrall a letter, stating that she did not intend to coerce Dorrall to retire. In the letter, Rittenhouse stated that "[she had] not initiated any disciplinary action," and if "[she] had elected to propose a disciplinary

suspension action, [he] would have been given an opportunity to reply and to take advantage of all other due process rights which are made available to all employees by law and regulation."[2] Moreover, she invited him to reconsider his retirement decision. Dorrall did not respond to Rittenhouse's letter.

On September 19, 2000, Dorrall filed another EEO complaint against his supervisors, alleging that he was forced to retire as a result of discrimination on the basis of race, national origin, gender, and in reprisal for his earlier EEO complaint. On January 23, 2001, the agency issued a final decision finding that his decision to retire was not the result of discrimination.

On February 23, 2001, Dorrall appealed the agency decision to the Board. On March 1, 2001, the Board issued an acknowledgment order, requiring Dorrall "to file evidence and argument to prove that this action is within the Board's jurisdiction." *Dorrall v. Dep't of the Army*, DC-0752-01-0308-I-1, at 2 (Mar. 1, 2001) (Acknowledgment Order). The Board was concerned that it lacked jurisdiction because "resignation and retirement actions are presumed to be voluntary and, consequently, are not appealable to the Board." *Id.* Dorrall's submission concerning the Board's jurisdiction was due "within 15 days of the date of this Order," that is by March 16, 2001. *Id.* However, Dorrall had previously informed the Board through his legal counsel that he intended to file a statement in support of his appeal by March 26, 2001, ten days later.[3] Dorrall failed to meet the Board's deadline, filing his statement in support of his appeal on

March 21, 2001. The Board subsequently dismissed the appeal, stating that Dorrall "has failed to make a nonfrivolous allegation of involuntariness sufficient to warrant a hearing," and that Dorrall "has not met his burden of proving that his retirement was involuntary." Initial Decision at 5.

Dorrall timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

### I

■ We must affirm the final decision of the Board unless we conclude that it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000). The Board's jurisdiction is statutorily limited and includes adverse personnel actions. *Middleton v. Dep't of Defense*, 185 F.3d 1374, 1379 (Fed.Cir.1999).

### II

■ Dorrall first urges that the Board erred by not considering his Statement in Support of Appeal, and that this error led to the dismissal of his appeal for lack of jurisdiction. Dorrall further urges that he had good cause for his untimely filing because he exercised due diligence or ordinary prudence under the circumstances. We disagree.

Here the Board clearly set a fifteen-day time limit from the date of the March 1

---

**2.** Letter from Sandra Rittenhouse, Chief, Acquisition Policy Team, Office of the Deputy Chief of Staff for Research, Development and Acquisition, to James H. Dorrall (Aug. 8, 2000).

**3.** Letter from Errol R. Thompson, Counsel for James Dorrall, to Merit Systems Protection Board (Feb. 23, 2001) (stating that a statement in support of the appeal would be filed within thirty days of February 23, 2001, the filing date of the appeal).

acknowledgment order for filing a statement in support of his appeal. Acknowledgment Order at 2. Dorrall failed to meet the deadline set by the Board for submitting his statement, that is March 16, and instead opted to satisfy his own self-imposed deadline. On this appeal, Dorrall urges that the statement should have been received because "[h]e satisfied that self-imposed deadline when he filed a Statement in Support of Appeal on March 20, 2001." Petitioner's Reply Br. at 1. Dorrall failed to show due diligence or the existence of circumstances beyond his control that prevented him from meeting the filing deadline. *See Walls v. Merit Sys. Prot. Bd.,* 29 F.3d 1578, 1582 (Fed.Cir.1994). The Board did not abuse its discretion when it excluded Dorrall's statement from the record. *See* 5 C.F.R. § 1201.58(b) (2002) ("If the appellant waives the right to a hearing, the record will close on the date the judge sets as the final date for the receipt or filing of submissions of the parties.").

### III

■ On the merits, Dorrall urges that he was coerced to retire by management. "[T]o establish involuntariness on the basis of coercion, an employee must show that the agency effectively imposed the terms of the employee's resignation or retirement, that the employee had no realistic alternative but to resign or retire, and that the employee's resignation or retirement was the result of improper acts by the agency." *Staats v. United States Postal Serv.,* 99 F.3d 1120, 1124 (Fed.Cir. 1996) (citations omitted). "The Board has jurisdiction over an appeal if the government employee makes non-frivolous allegations of jurisdiction supported by affidavits or other evidence." *Dick v. Dep't of Veterans Affairs,* 290 F.3d 1356, 1361 (Fed.Cir.2002). And the Board may properly consider the government's evidence as

well as the employee's. In that respect, the standard is analogous to that for summary judgment. Thus, in this context, the petitioner must show the existence of a material fact issue as to voluntariness to support Board jurisdiction. Non-frivolous allegations cannot be supported by unsubstantiated speculation in a pleading submitted by petitioner. Here Dorrall, who had the burden of proof, has failed to produce sufficient evidence to create a material fact issue as to whether his retirement was involuntary.

■ First, Dorrall urges that the agency improperly sought to impose a ten-day suspension on him based on an unsubstantiated charge. In light of his excellent work performance and no prior history of disciplinary action in his entire career with the Army, Dorrall contends that his supervisors improperly considered disciplining him for alleged infractions of "refusal to testify, interference or obstruction of an investigation" and "deliberate misrepresentation, exaggeration, concealment, withholding of a material fact, including lying to a supervisor" and that these unsubstantiated charges forced him to retire. Petitioner's Br. at 12. This is not a case in which disciplinary action was formally commenced. A particularly strong showing is required to establish impropriety where the agency is only *considering* disciplinary action. Dorrall has provided no evidence showing that consideration of disciplinary action was baseless. Circumstantial evidence supporting the agency decision includes Dorrall's request for leave after the August 3 hearing was set, and his cancellation of his leave request for August 3 shortly after the parties signed a settlement agreement resolving his first EEO complaint. Moreover, as Dorrall acknowledges in his brief, "Cornett drafted an alleged contemporaneous note indicating that Petitioner told him that he did not

need the August 3, 2000 leave because he had reached a settlement." Petitioner's Br. at 5. Notably, Dorrall failed to submit an affidavit contradicting Cornett's version of the conversation. Although the charges may or may not have been proven had Rittenhouse or Cornett elected to initiate them, at least in so far as the discipline was based on deliberate misrepresentation, the circumstantial evidence here is sufficient so that we conclude that Dorrall did not establish a complete lack of support for *considering* a charge.[4] Accordingly, Dorrall has failed to make a non-frivolous showing that the agency acted improperly based on an unsubstantiated charge.

Second, Dorrall contends that Rittenhouse, one of his supervisors, retaliated against him by considering suspending him for ten days because he filed an EEO charge against her. As with item "first," since discipline was only considered and not initiated, a heightened showing of improper purpose is required. This showing has not been made here. The evidence that Dorrall provides in support of his retaliation claim includes: (1) Rittenhouse's testimony that she felt as if he had gone behind her back in filing the claim without speaking to her first; (2) Rittenhouse's testimony that if he wanted his job back (after his resignation), then she would have worked with the department to determine where he would work because it would have been a hardship on both of them for him to remain in the division; (3) Mill's testimony that Dorrall should be disciplined in connection with the leave incident and that she had never dealt with anyone so arrogant and uncooperative; and (4) his own testimony that management wanted him out of the agency. However, none of this evidence establishes that Dorrall's supervisors contemplated action *because of* hostility toward Dorrall based on his EEO complaint. Dorrall's own conclusory testimony speculating about the link to the proposed disciplinary action is hardly sufficient to establish an improper motive. Therefore, we conclude that Dorrall has failed to support a non-frivolous allegation that the agency acted improperly against him because of his EEO claim.

■ Third, Dorrall contends that management created a hostile work environment that left him with no choice but to retire. He further contends that the proposed ten-day suspension would have negatively affected his career in the Army, led to a financial loss of wages and benefits, and threatened his mental health. To support this allegation, Dorrall points to the events of the August 2 meeting when Rittenhouse questioned him in a raised tone of voice about ordering the most expensive item on the menu for his birthday luncheon, requesting reimbursement on a one dollar error in a travel voucher, and with respect to his filing a workers' compensation claim, whether there were any witnesses to his accident. However, these events are insufficient to support a non-frivolous allegation. "As this court has explained, the fact that an employee is faced with an unpleasant situation or that his choice is limited to two unattractive options does not make the employee's decision any less voluntary." *Staats*, 99 F.3d at 1124 (citations omitted). We conclude that Dorrall has not supported a non-frivolous allegation that he was faced with a hostile work environment that forced him to retire.

---

4. Given the sufficiency of support for charges relating to Dorrall's alleged misrepresentations to his supervisors and others, it is unnecessary to reach the question of the sufficiency of support for charges relating to obstruction of the investigation by Dorrall's action in taking leave for the day of the scheduled investigative hearing.

We have considered Dorrall's other arguments and find them unpersuasive.

## CONCLUSION

For these reasons, we affirm the decision of the Board dismissing Dorrall's appeal for lack of jurisdiction because Dorrall has not produced sufficient evidence to support his non-frivolous allegation that he was coerced into an involuntary retirement.

*AFFIRMED.*