# United States Court of Appeals for the Federal Circuit

2007-3216

DOUGLAS KAHN,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

Thomas G. Roth, Law Offices of Thomas G. Roth, of West Orange, New Jersey, argued for petitioner.

Steven J. Gillingham, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. On the brief were Jeanne E. Davidson, Director, Todd M. Hughes, Deputy Director, and Steven Abelson, Attorney.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2007-3216

DOUGLAS KAHN,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

Petition for review of the Merit Systems Protection Board in AT1221060966-W-1.

DECIDED:  June 11, 2008

Before NEWMAN, LOURIE, and SCHALL, <u>Circuit Judges</u>.

SCHALL, <u>Circuit Judge</u>.

Douglas Kahn is a Special Agent ("SA") of the Drug Enforcement Administration ("DEA"), a component of the Department of Justice.  He is assigned to the DEA's Atlanta Field Division.  In this appeal, he petitions for review of the final decision of the Merit Systems Protection Board ("Board") that dismissed for lack of jurisdiction his individual right of action ("IRA") appeal under the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8) (2000) ("WPA").  <u>Kahn v. Dep't of Justice</u>, No.  AT-1221-06-0966-W-1

(M.S.P.B. Mar. 23, 2007) ("Final Decision").[1] In his IRA appeal, Mr. Kahn alleged that his 2005 transfer from Beaufort, South Carolina, to the Atlanta Field Division was in retaliation for his having made protected disclosures under the WPA. The AJ dismissed the appeal for lack of jurisdiction after concluding that the disclosures Mr. Kahn made were not protected disclosures under the WPA because they were made as part of his normal duties. Id. at 5. Because we hold that Mr. Kahn made non-frivolous allegations that the disclosures he made were outside of his normal duties, we reverse the Final Decision and remand the case to the Board for further proceedings consistent with this opinion.

## BACKGROUND

### I.

On August 24, 2005, Mr. Kahn filed a whistleblowing complaint with the United States Office of Special Counsel ("OSC").[2] Id. at 2. In his complaint, Mr. Kahn alleged that certain reports he made to his superiors constituted protected disclosures under the WPA. Id. Mr. Kahn further alleged that the DEA had engaged in a prohibited personnel practice in retaliation for those disclosures by transferring him to the Atlanta Field Division. Id. On July 5, 2006, OSC gave Mr. Kahn notice that it had terminated its inquiry into his complaint and would not be taking corrective action. Id. Mr. Kahn thereafter filed his IRA appeal with the Board.

---

[1] Pursuant to 5 C.F.R. § 1201.113, the administrative judge's ("AJ's") initial decision became the final decision of the Board on April 27, 2007, after Mr. Kahn failed to file a petition for review with the full Board. Hence, we refer to the AJ's March 23 initial decision as the Board's "Final Decision."

[2] OSC is responsible for receiving and investigating allegations of prohibited personnel practices under the WPA. 5 U.S.C. § 1212(a). The statutory provisions relating to OSC are at 5 U.S.C. §§ 1211–19.

II.

The Board has jurisdiction over an IRA appeal "'if the appellant has exhausted administrative remedies before . . . OSC and makes 'non-frivolous allegations' that (1) he engaged in whistleblowing activities by making a protected disclosure under 5 U.S.C. § 2302(b)(8), and (2) the disclosure was a contributing factor in the agency's decision to take a personnel action as defined by 5 U.S.C. § 2302(a).'" Fields v. Dep't of Justice, 452 F.3d 1297, 1302 (Fed. Cir. 2006) (quoting Yunus v. Dep't of Veterans Affairs, 242 F.3d 1367, 1371 (Fed. Cir. 2001)). A protected disclosure under section 2302(b)(8) is defined in relevant part as

> (A) any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—
>
> (i) a violation of any law, rule, or regulation, or
>
> (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety . . . .

The AJ found that Mr. Kahn had demonstrated that he had exhausted his remedies before OSC. Final Decision at 2. In addition, the AJ noted that a transfer or reassignment is a personnel action under 5 U.S.C. § 2302(a)(2). Id. at 3. The AJ then turned to the question of whether Mr. Kahn had made non-frivolous allegations of protected disclosures under 5 U.S.C. § 2302(b)(8) so as to establish Board jurisdiction over his IRA appeal. The AJ noted that the following was undisputed:

In 2002, Mr. Kahn was a member of a "Provisional Task Force" ("Task Force") that operated out of the DEA's Beaufort Office. The Task Force was charged with investigating drug crimes and developing criminal cases against drug offenders. Id.

Cases developed by the Task force were prosecuted by the United States Attorney in Charleston, South Carolina. Id.

The Task Force was comprised of DEA agents and officers from the Beaufort County Sheriff's Office and the Beaufort Police Department. Id. In addition to Mr. Kahn, the Task Force included DEA SA Henry Meehan and local law enforcement officers Donald Annis and Tony Herald.[3] The Beaufort Office reported to Steven Mitchell, the Resident Agent in Charge ("RAC") of the DEA's Charleston Resident Office. Id. RAC Mitchell had supervisory responsibility over Mr. Kahn and all other members of the Beaufort Office. Id. RAC Mitchell, in turn, reported to Assistant Special Agent in Charge ("ASAC") John Ozaluk, who was stationed in DEA's Columbia District Office. Id.

At some point in 2002, an individual who had recently been released from prison and who had an extensive criminal record contacted the Task Force and expressed interest in becoming a confidential source. Ultimately, this individual discussed the possibility of becoming a confidential source with TFA Annis. Eventually, Annis proceeded to utilize the individual as a confidential source.

In May of 2002, Mr. Kahn had a series of communications with RAC Mitchell relating to what Mr. Kahn stated was improper conduct of TFA Annis regarding the confidential source. Id. Thereafter, Mr. Kahn documented these communications in a memorandum dated August 16, 2002 to ASAC Ozaluk. Id. In his communications and memorandum, Mr. Kahn reported to his superiors that Annis had used the confidential source without first having him documented and registered as a DEA source and that

---

[3] Annis and Herald were designated as Task Force Agents ("TFAs") in the Beaufort Office.

Annis had been involved with the confidential source in a drug transaction without following required procedures. Id. According to Mr. Kahn, this alleged conduct on the part of Annis was in violation of DEA rules and regulations. In addition, in his August 16 memorandum, Mr. Kahn indicated that he had raised the issue of Annis's conduct with Annis's superiors at the Beaufort County Sheriff's Office, including Sheriff P.J. Tanner. Id. Eventually, Sheriff Tanner removed Annis from the Task Force. Id.

The foregoing matters, which the AJ noted were undisputed and which are recited in the Final Decision, were mostly set forth in an affidavit dated December 6, 2006, that Mr. Kahn submitted to the Board. In his affidavit, and through documents that were before the Board, Mr. Kahn alleged, in addition to what is recited in the Final Decision, the following:

Following Annis's removal from the Task Force, Assistant United States Attorney Robert Bickerton of the United States Attorney's Office in Charleston, who had worked with Annis, complained of "integrity problems" in Mr. Kahn's investigative work for DEA. Specifically, Bickerton suggested in a meeting with ASAC Ozaluk that Mr. Kahn had made material misrepresentations in various investigative reports. As a consequence, DEA's Office of Professional Responsibility conducted an investigation of Mr. Kahn. The investigation commenced in January of 2003. Ultimately, in January of 2004, the Office of Professional Responsibility cleared Mr. Kahn of all charges of misconduct.

Even though DEA's Office of Professional Responsibility found no wrongdoing on Mr. Kahn's part, the United States Attorney's Office conducted its own investigation of Mr. Kahn's conduct, so as to determine whether the Office would be required to disclose any past false statements or misrepresentations by Mr. Kahn to criminal defendants

against whom Mr. Kahn testified.[4] During this investigation, the United States Attorney's Office barred Mr. Kahn from presenting any cases to it. Though the United States Attorney's Office also determined that Mr. Kahn had not engaged in any wrongdoing, the Office recommended that Mr. Kahn be transferred to a post outside of the State of South Carolina. Eventually, though Mr. Kahn expressed an interest in working in North Carolina in the event of a transfer out of state, the DEA transferred him to Atlanta, Georgia in July of 2005.

In ruling on the Board's jurisdiction, the AJ focused on one issue:

> Even assuming that the appellant possessed a reasonable belief that his oral and written reports concerning Mr. Annis'[s] use of his [confidential source] constituted evidence of a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, abuse of authority, or a substantial and specific danger to the public health or safety, to the extent that they represented "disclosures made as part of normal duties through normal channels," they remain unprotected under 5 U.S.C. § 2302(b)(8). See Fields v. Dep't of Justice, 452 F.3d 1297, 1305 (Fed. Cir. 2006) (citing Huffman v. Office of Pers. Mgmt., 263 F.3d 1341, 1354 (Fed. Cir. 2001)); see also Willis v. Dep't of Agric., 141 F.3d 1139, 1144 (Fed. Cir. 1998) (reporting in connection with assigned normal duties is not a protected disclosure covered by the Whistleblower Protection Act).

Final Decision at 3–4.

The AJ acknowledged that Mr. Kahn's job description confirmed that investigating the professional misconduct of Task Force agents, such as TFA Annis, did not form part of his normal duties. Id. at 4. The AJ concluded, however, that Mr. Kahn's reports concerning Annis's use of the confidential source did not fall outside of his normal duties. Id. The AJ reasoned that, in discussing Annis's use of the confidential source with his superiors, Mr. Kahn was engaged in the core purpose of his position as

---

[4] Under Giglio v. United States, 405 U.S. 150 (1972), a prosecutor is required to provide to a criminal defendant evidence that affects the credibility of a witness who testifies against the defendant, id. at 154.

a Criminal Investigator GS-13, as set forth in his position description: "to plan and conduct highly complex criminal investigations primarily involving major violators in large-scale drug trafficking networks operating throughout several regions of the United States, nationwide or internationally." Id. The AJ determined that Mr. Kahn's reports concerning Annis's activities with the confidential source related to an ongoing drug investigation. Id. at 5. "This drug operation, and not any independent investigation into Mr. Annis'[s] professional misconduct, was the focus of [the] back and forth communications" between Mr. Kahn and his superiors, the AJ stated. Id. For this reason, the AJ ruled that Mr. Kahn had failed to make non-frivolous allegations that he made a protected disclosure under 5 U.S.C. § 2302(b)(8). Id. He therefore held that the Board lacked jurisdiction over Mr. Kahn's IRA appeal. Id.

DISCUSSION

I.

We have jurisdiction over Mr. Kahn's appeal pursuant to 28 U.S.C. § 1295(a)(9). Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c); Abell v. Dep't of the Navy, 343 F.3d 1378, 1382-83 (Fed. Cir. 2003). We review decisions of the Board regarding its own jurisdiction without deference. McCormick v. Dep't of the Air Force, 307 F.3d 1339, 1340 (Fed. Cir. 2002) (citing King v. Briggs, 83 F.3d 1384, 1387 (Fed. Cir. 1996)). Before the Board, an appellant bears the burden of establishing Board jurisdiction. Id.

(citing Clark v. U.S. Postal Serv., 989 F.2d 1164, 1167 (Fed. Cir. 1993)); 5 C.F.R. § 1201.56(a)(2)(i) (2007)).

As already noted, the Board has jurisdiction over an IRA appeal if the appellant has exhausted his or her administrative remedies before the OSC and makes non-frivolous allegations that (1) he or she engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8) and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). The standard for determining whether non-frivolous disclosures exist "is analogous to that for summary judgment." Dorrall v. Dep't of the Army, 301 F.3d 1375, 1380 (Fed. Cir. 2002), overruled on other grounds by Garcia v. Dep't of Homeland Sec., 437 F.3d 1322 (Fed. Cir. 2006). "[T]he petitioner must show the existence of a material fact issue . . . to support Board jurisdiction. Non-frivolous allegations cannot be supported by unsubstantiated speculation in a pleading submitted by petitioner." Id. The determination of whether an allegation of jurisdiction is non-frivolous is made based entirely on the written record, and a hearing with respect to the existence of jurisdiction is unnecessary. Francisco v. Office of Pers. Mgmt., 295 F.3d 1310, 1313 (Fed. Cir. 2002). If the employee successfully makes nonfrivolous allegations of jurisdiction, the Board then conducts a hearing on the merits. Yunus, 242 F.3d at 1371; Spruill v. Merit Sys. Prot. Bd., 978 F.2d 679, 687–88 (Fed. Cir. 1992).

II.

The basis for the AJ's conclusion that Mr. Kahn had failed to make non-frivolous allegations that he had made protected disclosures under the WPA was his determination that Mr. Kahn's reports to his superiors were not outside of his normal job

duties. According to the AJ, this was because, although it was not part of Mr. Kahn's duties to report wrongdoing of others, it was part of his duties to plan and conduct drug investigations, and it was in that context that he reported to his superiors about TFA Annis.

We addressed the issue presented by this appeal in Huffman v. Office of Personnel Management, 263 F.3d 1341 (Fed. Cir. 2001). In Huffman, we outlined three categories into which a disclosure may fall, only the latter two of which constitute disclosures that are protected under the WPA: (1) disclosures made as part of normal duties through normal channels, (2) disclosures as part of normal duties outside of normal channels, and (3) disclosures outside of normal duties. Id. at 1353–54. On appeal, Mr. Kahn contends that his reports concerning TFA Annis's use of the individual he (Annis) recruited as a confidential source fell into the third Huffman category. We explained in Huffman that this category involves the situation "in which the employee is obligated to report the wrongdoing, but such report is not part of the employee's normal duties or the employee has not been assigned those duties." Id. at 1354. In making this statement, we noted: "For example, the regulations, 5 C.F.R. § 2635.101(b)(11), specifically require all employees to 'disclose waste, fraud, abuse, and corruption to appropriate authorities.'" Id. at 1354 n.6. In other words, a disclosure comes within the third category of Huffman if, although the employee, like all agency employees, is generally required to report wrongdoing that he or she sees, the disclosure is not part of the employee's assigned duties.

Mr. Kahn argues that he made non-frivolous allegations that the reports he made to his superiors concerning TFA Annis came within Huffman category 3. In advancing

this argument, Mr. Kahn relies primarily upon his December 6, 2006 affidavit. In his affidavit, Mr. Kahn outlined the chain of command at the Beaufort Office. Kahn Aff. ¶ 6. In that regard, he stated that all of the agents in Beaufort reported directly to RAC Mitchell and that he (Mr. Kahn) and SA Meehan were co-equals in the office. Id. ¶ 7. Mr. Kahn stated that the ultimate decision to register a confidential source was made by either RAC Mitchell or ASAC Ozaluk. Id. ¶ 8. Mr. Kahn continued that he was not directly involved in the process of registering the confidential source at issue and that SA Meehan and TFA Annis did all of the paperwork to register the confidential source and then passed the paperwork to RAC Mitchell without any review or participation by him (Kahn). Id. ¶ 9. Thus, Mr. Kahn stated, "TFA Annis would have supervised [the confidential source] and controlled his undercover efforts." Id. Mr. Kahn recounted that the confidential source "had been 'fronted' an ounce of crack cocaine by a target trafficker." Id. ¶ 10. Mr. Kahn stated that he told Annis that "neither he nor anyone else associated with DEA could properly take custody of such drugs because [the confidential source] had not yet been documented as a [confidential source by DEA]." Id. After setting forth the ways in which Annis violated DEA regulations in his dealings with the confidential source, Mr. Kahn told of his reports to his superiors, RAC Mitchell and ASAC Ozaluk. Id. ¶¶ 12–13. He then stated:

> Although I believe that I, like all DEA Special Agents, am obligated to report misconduct if I am aware of it, that is not part of my normal duties with DEA. I have carefully reviewed the job description of the Special Agent position, and I see no reference to the reporting of misconduct committed by other agents or Task Force Officers. Rather, my job is to enforce the federal narcotics laws under Title 21 of the United States Code.

Id. ¶ 14.

2007-3216                                  10

Mr. Kahn contends that, because he made non-frivolous allegations of protected disclosures, the Board should have granted him a hearing on the merits of his appeal.

The government responds that it was part of Mr. Kahn's assigned duties to report TFA Annis's alleged violations of DEA rules and regulations. The government notes that Mr. Kahn's duties explicitly included "[d]etermin[ing] the most effective manner for developing and carrying out investigations." Rep't's Br. 12. In addition, the government points to the December 6, 2006 declaration of RAC Mitchell that was submitted to the Board. In his declaration, RAC Mitchell stated that "[b]ecause SA Kahn was the most senior Agent in such a small office, I designated him to report to me daily regarding administrative matters and ongoing law enforcement operations in . . . Beaufort . . . . SA Kahn called me every day to report what the office was doing administratively and operationally." Mitchell Decl. ¶ 4. RAC Mitchell noted that, during 2002, section 6622 of the DEA Special Agent's manual required that "'[e]ach undercover buy will be thoroughly planned by the immediate supervisor and all participating personnel'" and that "'[a]s much as possible, this planning will encompass all potential developments that could occur.'" Id. ¶ 5. Finally, RAC Mitchell stated:

> Pursuant to the Special Agent's Manual requirements in effect in 2002, as well as the more general instructions I gave to SA Kahn to report daily administrative matters and operational activities of the Beaufort [Office] to me, SA Kahn was required, as part of his assigned job duties, to notify me at least verbally of TFO Annis'[s] proposed use of a confidential source . . . to purchase crack cocaine or for DEA to provide Official Authorized Funds to a target in a DEA Organized Crime Enforcement Task Force . . . investigation.

Id. ¶ 11. Thus, the government maintains that the AJ did not err in his determination that Mr. Kahn's reporting of TFA Annis's activities relating to the confidential source did not fall outside of his normal duties.

2007-3216                                    11

III.

The narrow issue before us is whether Mr. Kahn made non-frivolous allegations that his reports concerning TFA Annis's activities were not part of his normal duties, so that they came within Huffman category 3. The evidence of record on this point consists of Mr. Kahn's position description and two competing statements, Mr. Kahn's affidavit and RAC Mitchell's declaration.

Before the Board, Mr. Kahn submitted an affidavit in which he alleged facts indicating that his reports concerning TFA Annis were not part of his normal duties. Specifically, Mr. Kahn acknowledged that, like all DEA agents, he was required to report wrongdoing of which he became aware. At the same time, however, he stated that the reporting of Annis's alleged violation of DEA rules and regulations was not part of his normal duties. He asserted that doing so went beyond his job responsibilities, contending that he had no supervisory responsibility over Annis, no involvement in the recruitment of the individual who became Annis's confidential source, and no specific job duty to ferret out and report misconduct of co-employees. The government relies upon the declaration of RAC Mitchell. In his declaration, RAC Mitchell stated that he designated Mr. Kahn to report to him daily regarding administrative matters and law enforcement operations at the Beaufort Office. Presumably, such reporting would have included Mr. Kahn's communications concerning Annis, thereby bringing those communications within the scope of Mr. Kahn's normal duties. In our view, although this is a close case, the combination of Mr. Kahn's job description and the competing sworn statements of Mr. Kahn and RAC Mitchell places the evidence on the question of Mr. Kahn's normal duties in equipoise. In short, there is a genuine issue of material fact

on the question. Under these circumstances, we think that Mr. Kahn has presented non-frivolous allegations that his reports concerning Annis were not part of his normal duties.

## CONCLUSION

For the foregoing reasons, we hold that the AJ erred in holding that Mr. Kahn had failed to make non-frivolous allegations that he made protected disclosures under 5 U.S.C. § 2302(b)(8). The decision of the Board that it lacks jurisdiction over Mr. Kahn's IRA appeal is therefore reversed. The case is remanded to the Board for a hearing on the merits of the appeal.[5]

REVERSED and REMANDED

---

[5] Before the Board, Mr. Kahn will have the burden of establishing his WPA claim by a preponderance of the evidence. Johnston v. Merit Sys. Prot. Bd., 518 F.3d 905, 909 (Fed. Cir. 2008). Specifically, he will be required to demonstrate that his reports to his superiors concerning TFA Annis constituted protected disclosures under 5 U.S.C. § 2302(b)(8), that the reports were not part of his normal duties, and that the reports were a contributing factor in the DEA's decision to transfer him to Atlanta. Id. At this point, however, Mr. Kahn has made non-frivolous allegations sufficient to establish Board jurisdiction. On appeal, the government does not dispute the AJ's assumption that Mr. Kahn's reports constituted disclosures of violations of DEA rules and regulations. At the same time, we have held that Mr. Kahn made non-frivolous allegations that his reports concerning Annis were not part of his normal duties. Finally, we think that Mr. Kahn's affidavit and the documentary material before the Board concerning the events that took place after his reports and the removal of Annis from the Task Force raised non-frivolous allegations that Mr. Kahn's reports concerning Annis were a contributing factor in the DEA's decision to transfer Mr. Kahn to Atlanta. If Mr. Kahn establishes a prohibited personnel practice by a preponderance of the evidence, the burden will shift to the DEA to demonstrate by clear and convincing evidence that it would have transferred him to Atlanta even in the absence of his protected disclosures. See Marano v. Dep't of Justice, 2 F.3d 1137, 1141 (Fed. Cir. 1993). If the DEA fails to carry that burden, the Board will then have occasion to fashion such corrective action as it considers appropriate. Id. at 1343.