**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| THOMAS C. DANIELS,<br>*Petitioner*,<br><br>v.<br><br>MERIT SYSTEMS PROTECTION<br>BOARD,<br>*Respondent.* | No. 13-73913<br><br>MSPB No.<br>SF-1221-12-0426-W-1<br><br><br>OPINION |

On Petition for Review of an Order of the
Merit Systems Protection Board

Submitted May 4, 2016[*]
Pasadena, California

Filed August 9, 2016

Before: Harry Pregerson, Jay S. Bybee,
and N. Randy Smith, Circuit Judges.

Opinion by Judge N.R. Smith

---

 [*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Whistleblower Protection Act

The panel denied a petition for review of a decision of the Merit Systems Protection Board ("MSPB") dismissing a federal employee's individual right of action appeal for lack of jurisdiction because the employee did not make a non-frivolous allegation under the Whistleblower Protection Act ("WPA").

Under the WPA, a federal employer is prohibited from taking personnel action against an employee who has disclosed information that evidences a violation of law, or gross mismanagement, gross waste of funds, abuse of authority, or substantial danger to public health or safety. An aggrieved employee, such as petitioner, may file with the MSPB an individual right of action that includes "non-frivolous allegations."

Petitioner was employed by the Social Security Administration, and he was suspended for fourteen days by an administrative law judge based on three charges. He filed an individual right of action with the MSPB, arguing that he made five disclosures that were protected whistleblowing activity under the WPA.

The panel held that the standard for determining whether a petitioner has made a non-frivolous disclosure is analogous to the standard for reviewing a motion to dismiss.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that petitioner did not allege a non-frivolous protected disclosure under the WPA. Specifically, the panel held that Disclosures #1-2 were not protected disclosures because an agency ruling or adjudication, even if erroneous, was not a violation of the law or gross mismanagement under the WPA. The panel further held that Disclosures #3-5 were not protected disclosures because communications concerning policy decisions were explicitly excluded from protection under the WPA. The panel also held that there was no evidence that the federal agency took any personnel action against petitioner as a result of Disclosures #3-5.

## COUNSEL

Thomas C. Daniels, Temple City, California, pro se Petitioner.

Calvin M. Morrow, Attorney; Bryan G. Polisuk, General Counsel; Office of the General Counsel, Merit Systems Protection Board, Washington, D.C.; for Respondent.

Marleigh D. Dover and Anne Murphy, Attorneys; André Birotte Jr., United States Attorney; Stuart F. Delery, Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Amicus Curiae Social Security Administration.

## OPINION

N.R. SMITH, Circuit Judge:

The Merit Systems Protection Board ("Board") has jurisdiction over individual right of action ("IRA") appeals only when a petitioner makes "non-frivolous allegations." *See Yunus v. Dep't of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001). Thomas Daniels, an employee of the Social Security Administration ("SSA"),[1] petitions for review of a Board order dismissing his IRA appeal for lack of jurisdiction. Daniels has not made a non-frivolous allegation under the Whistleblower Protection Act ("WPA"). Accordingly, we deny Daniels's petition for review.

## I.

Under the WPA, a federal employer (such as the SSA) is prohibited from taking a "personnel action[2] with respect to

---

[1] We deny the SSA's motion to intervene as untimely, but have considered the SSA's filings as briefs amici curiae.

[2] The WPA defines "personnel action" as:

> (i) an appointment; (ii) a promotion; (iii) an action under chapter 75 of this title or other disciplinary or corrective action; (iv) a detail, transfer, or reassignment; (v) a reinstatement; (vi) a restoration; (vii) a reemployment; (viii) a performance evaluation under chapter 43 of this title or under title 38; (ix) a decision concerning pay, benefits, or awards, or concerning education or training if the education or training may reasonably be expected to lead to an appointment, promotion, performance evaluation, or other action described in this subparagraph; (x) a

any employee . . . because of any disclosure of information by an employee" if the employee "reasonably believes [the disclosed information] evidences (i) any violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8)(A).

An aggrieved employee (such as Daniels) may "seek corrective action from the [Board]" by filing an IRA. 5 U.S.C. § 1221(a). For the Board to have jurisdiction over an IRA appeal:

> the appellant [must] exhaust[] his administrative remedies before the [Office of Special Counsel] and make[] "non-frivolous allegations" that (1) he engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8), and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a).

---

decision to order psychiatric testing or examination; (xi) the implementation or enforcement of any nondisclosure policy, form, or agreement; and (xii) any other significant change in duties, responsibilities, or working conditions; with respect to an employee in . . . a covered position in an agency.

5 U.S.C. § 2302(a)(2)(A).

*Yunus*, 242 F.3d at 1371.**[3]**   Under federal regulations, an allegation is non-frivolous in this context if it "(1) Is more than conclusory; (2) Is plausible on its face; and (3) Is material to the legal issues in the appeal."   5 C.F.R. § 1201.4(s).   Thus, the standard for determining whether a petitioner has made a non-frivolous disclosure is analogous to the standard for reviewing a motion to dismiss.**[4]**   *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (concluding that a complaint must state a claim that is more than conclusory and plausible on its face in order to survive a motion to dismiss).   If a petitioner fails to make a non-frivolous allegation, the Board will dismiss the action for lack of jurisdiction without a hearing on the merits.   *See* John J. Dvorske, Annotation, *Merit Systems Protection Board Jurisdiction over Individual Right of Action (IRA) Appeal*, 24 A.L.R. Fed. 2d 459, § 21 (2007) (collecting cases where petitioners failed to establish jurisdiction before the Board).

---

**[3]** The "non-frivolous allegation" jurisdictional standard is well established in the Federal Circuit, *see Yunus*, 242 F.3d at 1371–72 (collecting cases), and Congress has cited such standard with approval, *see* S. Rep. No. 112-155, at 6 (2012), *as reprinted in* 2012 U.S.C.C.A.N. 589, 594.

**[4]** The Federal Circuit has a different approach, instead equating the non-frivolous standard with the standard for summary judgment. *See Kahn v. Dep't of Justice*, 528 F.3d 1336, 1341 (Fed. Cir. 2008); *Dorrall v. Dep't of the Army*, 301 F.3d 1375, 1380 (Fed. Cir. 2002), *overruled on other grounds by Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322 (Fed. Cir. 2006).   However, we agree with the Fifth Circuit that the motion-to-dismiss standard is more analogous. *See Aviles v. Merit Sys. Prot. Bd.*, 799 F.3d 457, 462 & n.4 (5th Cir. 2015) ("[B]ecause the applicable federal regulations closely track our motion-to-dismiss standard—not our summary judgment standard—we decline to follow the Federal Circuit's approach.").

In 2012, Congress amended the WPA. *See* Whistleblower Protection Enhancement Act of 2012 ("WPEA"), Pub. L. No. 112-199, § 108, 126 Stat. 1465, 1469 (2012). Congress identified and abrogated specific judicial decisions by the Federal Circuit that had concluded that disclosures made in certain contexts (for example, during the course of an employee's regular duties, or where the information disclosed was already known) would not be eligible for WPA protection. *See generally* S. Rep. No. 112-155, at 4–5, 2012 U.S.C.C.A.N. at 592–93. Congress concluded that such decisions impermissibly narrowed the scope of the WPA and clarified that it "intend[ed] to protect 'any disclosure' of certain types of wrongdoing in order to encourage such disclosures" and "that the protection for disclosing wrongdoing is extremely broad and will not be narrowed retroactively by future [Board] or court opinions." *Id.* at 5, 2012 U.S.C.C.A.N. at 593.

## II.

Daniels was employed by the SSA as a Hearing Office Director[5] in its Office of Disability Adjudication and Review ("ODAR") in Orange, California. Daniels was suspended for fourteen days by an administrative law judge ("ALJ") based on three charges: (1) conduct unbecoming a federal employee; (2) failure to follow agency instructions; and (3) lack of candor. Faced with disciplinary proceedings, Daniels filed an IRA with the Board, alleging that he engaged in protected whistleblowing activity under the WPA for which he could not be disciplined. As outlined below,

---

[5] The record also describes this position as a Supervisory Attorney Adviser.

Daniels argues that he made five disclosures that were
protected under the WPA.

## A. Disclosures #1–2: The Congressional Inquiry

In December 2010, ALJ John Kays issued a decision
favorable to a claimant in a Social Security disability case. In
January 2011, the Orange Hearing Office received an inquiry
from the claimant's congressional representative requesting
a status update and asking for help in expediting the disability
payments to the claimant. In investigating the inquiry,
Daniels concluded that ALJ Kays's decision was erroneous
and benefits should not have been awarded to the claimant.
SSA procedures specified that, when responding to
congressional inquiries, any concerns with an ALJ's decision
should be brought to the Office of the Regional Chief ALJ.
Daniels did not follow these procedures. Instead, he
discussed his concerns with the Hearing Office's Chief ALJ,
Helen Hesse.[6] Daniels describes this communication with
ALJ Hesse as his first disclosure protected under the WPA
(hereafter "Disclosure #1").

After discussing his concerns with ALJ Hesse, Daniels
also communicated with Pamela Franklin, a manager at the
Payment Center responsible for initiating benefits payments
based on an ALJ's decision. Daniels informed Franklin of his
conclusion (that ALJ Kays's decision was legally

---

[6] ALJ Hesse agreed with Daniels's conclusion that ALJ Kays's decision
was erroneous. However, the SSA later asked Sarah Hong, a Regional
Quality Review Officer, to review ALJ Kays's decision and provide an
analysis regarding the legal sufficiency of the decision. Officer Hong
determined that, while the decision should have discussed specific medical
records, the medical evidence in the file supported ALJ Kays's
determination that the claimant was entitled to the award of benefits.

insufficient) and opined that the Payment Center should withhold payment. Daniels describes this communication with Franklin as his second disclosure protected under the WPA (hereafter "Disclosure #2").

The Office of the Regional Chief Judge for the San Francisco Region investigated Daniels's actions. When questioned, Daniels claimed not to remember having discussed the case with ALJ Hesse nor to recall the substance of his communications with the Payment Office. In October 2011, Regional Chief ALJ William J. King issued a decision suspending Daniels for fourteen days. ALJ King explained three reasons for the suspension. First, Daniels's "actions constituted conduct unbecoming a federal employee because they demonstrated a willingness to subvert established procedures to advance [Daniels's] personal views." ALJ King concluded that Daniels "improperly told Ms. Franklin that the ALJ decision was wrong; that it should not be effectuated; and that it should be referred to the Appeals Council." Second, Daniels failed to follow the SSA's "specific procedures for responding to congressional inquiries" and thus "impeded the efficiency of the [response] and created a risk of adverse publicity from the congressional office." Finally, ALJ King concluded that Daniels's statements to investigators "lacked candor" and thus "reflect[ed] a lack of integrity in the performance of Daniels's duties and interfered with [ALJ King's] investigation."

## B. Disclosures #3–5: Procedures for Purchasing Interpreter Services

During the period when SSA officials were investigating Daniels's actions related to the congressional inquiry, Daniels contacted Allyson Stokes, the Director of Acquisition Support

in the Office of Acquisition and Grants, with an unrelated complaint. Daniels informed Stokes that he had been advised not to use an office form known as "optional form (OF) 347" for purchase orders for interpreter services at the Orange Hearing Office and that this seemed contrary to Federal Acquisition Regulations and agency policy. Daniels describes this communication with Stokes as his third disclosure protected under the WPA (hereafter "Disclosure #3").

Shortly after Daniels's conversation with Stokes, ALJ King sent a directive to ALJ Hesse explaining that the Orange Hearing Office should cease using OF-347 to order the services of interpreters, but should instead use micro-purchase cards. Daniels filed a grievance, in which he alleged that ALJ King's purchasing directive violated Federal Acquisition Regulations and agency policy.

On May 31, 2011, ALJ King denied Daniels's grievance, reasoning that the requirement stated in his directive reflected a matter of policy. In a closing footnote, ALJ King reminded Daniels that "until this issue is resolved, you are obliged to carry out proper orders by officials authorized to give them."

On June 3, 2011, Daniels filed a grievance with Chief ALJ Debra Bice appealing ALJ King's decision. Daniels alleged that ALJ King's closing footnote implied a threat to take retaliatory personnel action against Daniels for refusing to obey an order that would require him to violate Federal Acquisition Regulations. Daniels describes this communication with Chief ALJ Bice as his fourth disclosure protected under the WPA (hereafter "Disclosure #4").

On June 29, 2011, Daniels notified SSA Deputy Commissioner Glenn Sklar of ALJ King's "inferred threat." Daniels describes this communication with Sklar as his fifth disclosure protected under the WPA (hereafter "Disclosure #5").

## III.

In August 2011, Daniels filed a complaint with the Office of Special Counsel.[7] In March 2012, the Office of Special Counsel informed ODAR that it was investigating Daniels's complaint, that it had concluded there was enough evidence to support Daniels's claims, and that it intended to seek corrective action. However, before the Office of Special Counsel was able to seek any corrective action, Daniels exercised his right to file an IRA appeal to the Board. As a result, the Office of Special Counsel closed its file on Daniels's complaint.

Daniels's IRA was first reviewed by an administrative judge. The administrative judge concluded that Daniels failed to show that his disclosures were protected by the WPA and denied Daniels's request for corrective action.

---

[7] The Office of Special Counsel was established by 5 U.S.C. § 1211. Aggrieved employees are required to "seek corrective action from the Special Counsel before seeking corrective action from the Board." 5 U.S.C. § 1214(a)(3). The Office of Special Counsel is tasked with investigating allegations of prohibited personnel practices and may seek corrective action from the Board on an aggrieved employee's behalf. *See id.* § 1214(a)(1)(A). However, the Special Counsel's findings are not binding on the Board. *See Frazier v. Merit Sys. Prot. Bd.*, 672 F.2d 150, 164 & n.51 (D.C. Cir. 1982).

Daniels filed a petition for review with the Board. On November 6, 2012, in a unanimous non-precedential final order, the Board denied the petition. The Board concluded that Daniels had failed to allege a non-frivolous protected disclosure under the WPA and dismissed his claims for lack of jurisdiction. This petition for review followed.

## IV.

The Ninth Circuit has only recently been granted jurisdiction to review Board decisions. Until 2012, the Federal Circuit had exclusive jurisdiction over such petitions. However, when Congress amended the WPA in 2012, it amended the procedures for judicial review of Board decisions. Now, 5 U.S.C. § 7703(b)(1)(B) provides for judicial review either in "the United States Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction."[8] As such, although Federal Circuit jurisprudence in this area is well established, this case presents issues of first impression for our court.

## V.

"Whether the [B]oard had jurisdiction to adjudicate a case is a question of law, which we review de novo." *See Forest v. Merit Sys. Prot. Bd.*, 47 F.3d 409, 410 (Fed. Cir. 1995); *see*

---

[8] Section 7703(b)(1)(B) also contains a "sunset provision," whereby, upon expiration, the Federal Circuit will presumably retain exclusive jurisdiction to review Board decisions. Originally, § 7703(b)(1)(B) was only effective "[d]uring the 2-year period beginning on the effective date of the Whistleblower Protection Enhancement Act of 2012 [December 30, 2012]." 5 U.S.C. § 7703 (effective through September 25, 2014). However, the current version of § 7703(b)(1)(B) extends this time frame to five years.

*also Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1136 (9th Cir. 2008) ("This court reviews questions of jurisdiction *de novo*.").

## VI.

The Board did not err by dismissing Daniels's IRA appeal for lack of jurisdiction, because Daniels failed to make sufficient non-frivolous allegations.

**A. Daniels failed to make a non-frivolous allegation that his disclosures regarding ALJ Kays's adjudicatory decisions were protected disclosures under the WPA (Disclosures #1–2)**

Daniels's disclosure of ALJ Kays's decision is not a disclosure protected under the WPA. For WPA protections to apply, the employee must reasonably believe that the disclosed information evidences either (1) a "violation of any law, rule, or regulation" or (2) "gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8)(A). An agency ruling or adjudication, even if erroneous, cannot reasonably suffice under either prong.[9] An ALJ, who makes an erroneous decision, does not violate the

---

[9] Daniels also faults the Board for failing to conduct a "reasonable belief" analysis concerning his disclosures. However, the initial decision of the administrative judge concluded that "a reasonable person with facts readily ascertainable to him would not find that a violation of law or regulation occurred or that the ALJ authorized a gross waste of funds." Further, the Board's conclusion that Daniels's claims were frivolous necessarily incorporates the conclusion that Daniels's claims were objectively unreasonable.

law (or engage in gross mismanagement) any more than does a district judge who is subsequently reversed on appeal.[10]

On this point, we agree with the decisions of the Federal Circuit and the Board. In *Meuwissen v. Department of Interior*, the Federal Circuit concluded that "the 'disclosure' of a decision by an administrative judge, albeit an incorrect one, is not a disclosure protected under the WPA." 234 F.3d 9, 13 (Fed. Cir. 2000), *superseded by statute on other grounds*, WPEA, Pub. L. No. 112-199, § 108, 126 Stat. at 1469. The court reasoned that "[s]uch a decision . . . is not a 'violation' of that law or any other law within the meaning of the WPA." *Id.* Likewise, in an Opinion and Order,[11] the Board concluded that "an employee's disagreement with an agency ruling or adjudication does not constitute a protected disclosure," reasoning that erroneous agency rulings "are corrected through the appeals process—not through insubordination and policy battles between employees and their supervisors." *O'Donnell v. Dep't of Agric.*, 2013 M.S.P.B. 69, 120 M.S.P.R. 94, 99–100 (2013) (citing

---

[10] We distinguish statements that disclose malfeasance, fraud, or the like by adjudicators. Such disclosures may indeed be subject to WPA protections. *See Cassidy v. Dep't of Justice*, 2012 M.S.P.B. 60, 118 M.S.P.R. 74, 78 (2012) (finding that petitioner made a non-frivolous allegation when he complained that an immigration judge's "conduct and unnecessary delays violated the due process rights of detained aliens"). Daniels has not made any such disclosure here. Instead, he has merely expressed his disagreement with an ALJ's decision.

[11] "An Opinion and Order is a precedential decision of the Board and may be appropriately cited or referred to by any party." 5 C.F.R. § 1201.117(c)(1). In contrast, "[a] nonprecedential Order is one that the Board has determined does not add significantly to the body of MSPB case law." § 1201.117(c)(2).

*Meuwissen*, 234 F.3d at 13–14), *aff'd*, 561 F. App'x 926 (Fed. Cir. 2014).

Daniels is correct that Congress (in passing the WPEA) explicitly superseded *Meuwissen*. S. Rep. No. 112-155, at 5, 2012 U.S.C.C.A.N. at 593. However, Congress's contention with *Meuwissen* was its holding that "disclosures of information already known are not protected."[12] *Id.*, 2012 U.S.C.C.A.N. at 593. As the Board later recognized in *O'Donnell*, "the WPEA did not disturb [*Meuwissen*'s] more general finding that erroneous administrative rulings are not the type of danger or wrongdoing that whistleblower protections were meant to address." 120 M.S.P.R. at 99 n.5. Thus, we do not undermine congressional intent nor do we improperly limit the definition of "disclosure" by concluding that an erroneous agency ruling or adjudication is not a violation of law for purposes of the WPA. Indeed, in enacting the WPEA, Congress explicitly stated that it only intended to protect disclosures "of certain types of wrongdoing."[13] S. Rep. No. 112-155, at 5, 2012 U.S.C.C.A.N. at 593. An agency ruling or adjudication, even if erroneous, is not the type of "wrongdoing" contemplated by the WPA.

---

[12] As a result, the WPEA established 5 U.S.C. § 2302(f)(1)(B) to make clear that a disclosure does not lose its protected status when "the disclosure revealed information that had been previously disclosed."

[13] The types of wrongdoing contemplated by Congress are "the kinds of misconduct listed in section 2302(b)(8)." S. Rep. No. 112-155, at 10–11, 2012 U.S.C.C.A.N. at 598–99. The WPEA did not amend section 2302(b)(8) and, therefore, did not change the types of wrongdoing or misconduct entitled to WPA protection.

**B.  Daniels failed to make a non-frivolous allegation that his disclosures regarding ALJ King's directive were protected disclosures under the WPA (Disclosures #3–5)**

ALJ King's directive to use micro-purchase cards (instead of OF-347) to order the services of interpreters was not a violation of the law for purposes of the WPA.  Instead, ALJ King's directive represents a policy decision.  The WPA explicitly excludes "communication[s] concerning policy decisions" from its definition of "disclosure."[14]   5 U.S.C. § 2302(a)(2)(D).     Thus,  Daniels's  communications concerning procedures for ordering interpreter services do not qualify as disclosures under the plain text of the WPA.

Even assuming Disclosures #3–5 qualify as "disclosures" under the WPA, Daniels still must show that the SSA "t[ook] . . . or threaten[ed] to take . . . a personnel action" as a result of such disclosures.  *See* 5 U.S.C. § 2302(b)(8)(A).  Again, Daniels fails—he offers no evidence that any personnel action was taken (or threatened) as a result of Disclosures #3–5.[15]

---

[14] Under the WPA, communications concerning policy decisions do not qualify as protected disclosures unless the employee "reasonably believes that the disclosure evidences (i) any violation of any law, rule, or regulation; or (ii) gross management, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(a)(2)(D).  We agree with the Board's conclusion that "there is no evidence in the record that would support a reasonable belief that the directive . . . amounts to a violation of any law, rule, or regulation."

[15] Daniels's fourteen-day suspension was the result of his response to the congressional investigation (Disclosures #1–2) and was unrelated to Disclosures #3–5.  Indeed, ALJ King's decision suspending Daniels refers only to Daniels's conduct in responding to the congressional investigation

Instead, Daniels argues that ALJ King implied a threat to take personnel action when he reminded Daniels that he was "obliged to carry out proper orders by officials authorized to give them." Even if § 2302(b)(8) covers implied threats, it was not reasonable for Daniels to believe that ALJ King made any such implied threat when he instructed Daniels to follow the orders of authorized officials.

## VII.

Daniels has not alleged a non-frivolous protected disclosure under the WPA. Disclosures #1–2 are not protected disclosures, because an agency ruling or adjudication, even if erroneous, is not a violation of the law or gross mismanagement under the WPA. Disclosures #3–5 are not protected disclosures, because communications concerning policy decisions are explicitly excluded from protection under the WPA. Further, there is no evidence that the SSA took any personnel action against Daniels as a result of Disclosures #3–5.

Accordingly, we **DENY** the petition.

---

and contains no reference to Daniels's unrelated complaint regarding procedures for ordering interpreter services. Daniels has not presented any evidence that suggests the suspension was also connected to Disclosures #3–5.