**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2015 MSPB 52**

Docket No. PH-1221-15-0086-W-1

**Arthur E. Sherman,**

**Appellant,**

**v.**

**Department of Homeland Security,**

**Agency.**

September 11, 2015

Arthur E. Sherman, Williston, Vermont, pro se.

Laura J. Carroll, Saint Albans, Vermont, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1    The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the petition for review, VACATE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Order.

BACKGROUND

¶2    The following facts appear to be undisputed. The appellant is a GS-13 Contract Specialist for the agency. Initial Appeal File (IAF), Tab 9 at 4. On May 18, 2012, he reported to the Chief of the Contracting Office that certain

agency Contracting Officers were violating Homeland Security Acquisition Manual (HSAM) § 3032.7002.[1]  IAF, Tab 1 at 5, Tab 5 at 4-5 & n.1, Tab 9 at 26. Specifically, these Contracting Officers were providing Contract Specialists with presigned stickers to indicate that the Contracting Officers had reviewed and approved invoices that they had not actually seen.  IAF, Tab 1 at 5, Tab 5 at 4-5 & n.1, Tab 9 at 20-22.  The agency responded to the appellant's disclosure by investigating and ending the practice of presigned stickers, and counseling the appellant's first- and second-line supervisors, both of whom had engaged in the practice.  IAF, Tab 1 at 5, Tab 5 at 11, 13, Tab 9 at 26.  The appellant's first- and second-line supervisors were the rating and reviewing officials respectively for his performance evaluations.  IAF, Tab 8 at 6.

## ANALYSIS

¶3       On November 1, 2012, the appellant received a performance evaluation with a summary rating of "Exceeded Expectations," which was the same summary rating that he had received the previous year.  IAF, Tab 9 at 4-9, Tab 15 at 16-20. The following year, on November 1, 2013, the appellant's first-line supervisor provided him with a copy of his fiscal year 2013 performance evaluation, reflecting a summary rating of "Achieved Expectations."  IAF, Tab 8 at 19-24. However, the performance evaluation had not been signed by either the first- or second-line supervisor.  *Id*. at 22.  The appellant refused to sign the performance evaluation.  *Id*. at 19.  Instead, on November 7, 2013, he emailed his second-line supervisor and identified himself as the one who had reported the violation of HSAM § 3032.7002.  IAF, Tab 8 at 18.

---

[1] HSAM § 3032.7002 provides that Contracting Officers generally are responsible for the review and approval of each invoice submitted by a contractor.  IAF, Tab 5 at 4 n.1.

¶4　　　On November 18, 2013, the appellant filed a grievance challenging the performance evaluation on the basis that it was unsigned.[2]  IAF, Tab 6 at 8.  On November 29, 2013, the appellant's first- and second-line supervisors signed the performance evaluation and returned it to him.  *Id.*; IAF, Tab 7 at 8-12.  On December 30, 2013, the appellant filed a second grievance, arguing that the performance evaluation included ratings on two performance goals that were inapplicable to his position.  IAF, Tab 6 at 8.  On January 30, 2014, the agency responded by revising the performance evaluation to exclude the two inapplicable goals from the calculation and reweighing the remaining three goals.  *Id.*; IAF, Tab 8 at 4-8, 21.  This resulted in a slight increase in the raw points contributing toward the appellant's summary rating, but still left him in the "Achieved Expectations" category.  IAF, Tab 8 at 5, 21.  On March 4, 2014, the appellant filed a third grievance, this time challenging the January 30, 2014 performance evaluation.  IAF, Tab 7 at 7.  The grievance proceeded from Step I to Step III, being denied at each stage on both timeliness and substantive grounds.[3]  IAF, Tab 6 at 4-15, Tab 7 at 4-5.

¶5　　　On June 11, 2014, the appellant filed a whistleblower complaint with the Office of Special Counsel (OSC), alleging that his January 30, 2014 performance evaluation and the agency's decision not to grant him a cash award for fiscal year 2013 were in retaliation for his May 18, 2012 disclosure.[4]  IAF, Tab 1

---

[2] The appellant is a union official and was the union representative in at least some of the grievance and unfair labor practice proceedings described below.  IAF, Tab 6 at 7, 13, Tab 7 at 7.

[3] The grievance never went to arbitration.  IAF, Tab 5 at 18.  Instead, on June 12, 2014, the appellant filed two unfair labor practice charges with the Federal Labor Relations Authority regarding the manner in which the agency calculated his rating and alleging reprisal for grievance activity.  *Id*. at 25-28.  The record does not reveal whether these charges have been resolved.

[4] It appears that the appellant received a time-off award of 8 hours.  IAF, Tab 5 at 27, Tab 15 at 31.

at 13-19.  OSC closed its file without taking corrective action, and the appellant filed the instant IRA appeal.  *Id*. at 1-5, 20.  After notifying the appellant of his jurisdictional burden and taking evidence and argument from the parties, the administrative judge dismissed the appeal for lack of jurisdiction without a hearing.  IAF, Tab 1 at 2, Tab 10, Tab 18, Initial Decision (ID) at 1, 9.  She found that the Board lacks jurisdiction over the appeal because the appellant made an election of remedies to grieve the performance evaluation before he filed his whistleblower complaint with OSC and that he failed to make a nonfrivolous allegation that his disclosure was a contributing factor in the performance evaluation.  ID at 5-9.

¶6        The appellant filed a petition for review, challenging the administrative judge's findings on the two dispositive issues.  Petition for Review (PFR) File, Tab 1.  The agency filed a response, PFR File, Tab 3, and the appellant filed a reply, PFR File, Tab 4.

The appellant made a nonfrivolous allegation that his disclosure was a contributing factor in his fiscal year 2013 performance evaluation.

¶7        Generally, to establish jurisdiction over an IRA appeal regarding activity protected under 5 U.S.C. § 2302(b)(8), an appellant must prove that he exhausted his administrative remedies before OSC and make nonfrivolous allegations that (1) he engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8), and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a).  *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001); *Rusin v. Department of the Treasury*, 92 M.S.P.R. 298, ¶ 12 (2002). Here, it is undisputed that the appellant exhausted his administrative remedies before OSC and that he made a nonfrivolous allegation that he made a protected disclosure on May 18, 2012.  ID at 9; PFR File, Tab 3 at 6.  The remaining question is whether the appellant made a nonfrivolous allegation that his disclosure was a contributing factor in the personnel actions at issue.

¶8      To satisfy the contributing factor criterion at the jurisdictional stage of the case, the appellant need only raise a nonfrivolous allegation that the fact of, or the content of, the protected disclosure was one factor that tended to affect the personnel action in any way.  *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 26 (2011).   One way to establish this criterion is the knowledge/timing test, under which an employee may nonfrivolously allege that the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official who took the personnel action knew of the disclosure, and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action.  *Id.*  A disclosure that occurs after the personnel action at issue was taken cannot be considered a contributing factor in that personnel action.  *Id.*, ¶ 27.

¶9      The administrative judge found that the agency first issued the appellant's fiscal year 2013 performance evaluation on November 1, 2013, but that the appellant failed to make a nonfrivolous allegation that any agency official who influenced his performance rating knew about his disclosure until November 7, 2014.  ID at 8-9.  The appellant, however, argues that his performance evaluation was not completed until January 30, 2014, which was after his second-line supervisor knew about his disclosure.[5]  PFR File, Tab 1 at 4-7.  We must resolve whether the performance evaluation had been completed prior to November 7, 2014, and was awaiting implementation, or whether it was merely contemplated

---

[5] The appellant also asserts that many people knew about his May 18, 2012 disclosure prior to November 1, 2013, and that his first- and second-line supervisors were likely among them.  PFR File, Tab 1 at 5-6.  This conjecture is unsupported by any record evidence, and we find that it does not amount to a nonfrivolous allegation that either supervisor knew about the appellant's disclosure before he emailed his second-line supervisor on November 7, 2013.  *See Kahn v. Department of Justice*, 528 F.3d 1336, 1341 (Fed. Cir. 2008) (setting forth the standard for nonfrivolous allegations and observing that they may not be based on "unsubstantiated speculation").

and in preparation before the appellant's second-line supervisor became aware of the disclosure. *See Fickie v. Department of the Army*, 86 M.S.P.R. 525, ¶¶ 8-9, 11 (2000) (remanding an appeal because, in part, the appellant's removal was merely contemplated and in preparation by the relevant agency officials when they learned of his disclosure). If the performance evaluation was completed on November 1, 2013, and was only waiting to go into effect when the appellant's second-line supervisor learned about the disclosure, then the disclosure could not have been a contributing factor in the performance evaluation. *See Horton v. Department of the Navy*, 66 F.3d 279, 284 (Fed. Cir. 1995), *superseded by statute on other grounds as stated in Day v. Department of Homeland Security*, 119 M.S.P.R. 589, ¶¶ 14, 18 (2013) (addressing what constitutes a protected disclosure).

¶10      We find that there is conflicting evidence on this issue. On the one hand, the appellant's rating in each of the applicable performance goals and competencies remained unchanged between the November 1, 2013 evaluation and the January 30, 2014 evaluation, as did his supervisor's explanation for each of these ratings. IAF, Tab 8 at 5, 7-8, 21, 23-24. On the other hand, the number of elements upon which the appellant was rated did change, as did their relative weights and ultimately the overall raw score for the appellant's summary rating. *Id*. at 5, 21. The time period covered by the January 30, 2014 evaluation is also 2 months shorter than that covered by the November 1, 2013 evaluation. *Id*. at 4, 20. Furthermore, the appellant alleges on review that his supervisor was still seeking and receiving basic data about his fiscal year 2013 performance after November 7, 2013. PFR File, Tab 1 at 5.

¶11      We cannot resolve this issue without weighing the conflicting evidence, and we therefore find that the appellant has made a nonfrivolous allegation that the decision underlying his performance evaluation was not final prior to November 7, 2013. *See Ferdon v. U.S. Postal Service*, 60 M.S.P.R. 325, 329 (1994) (in determining whether the appellant has made a nonfrivolous allegation,

the Board may not weigh evidence and resolve conflicting assertions of the parties). Coupled with the timing of the January 30, 2014 performance evaluation in relation to the appellant's second-line supervisor learning about the disclosure on November 7, 2013, we find that the appellant has made a nonfrivolous allegation under the knowledge/timing test that his disclosure was a contributing factor in the performance evaluation. *See* 5 U.S.C. § 1221(e)(1); *Swanson v. General Services Administration*, 110 M.S.P.R. 278, ¶ 12 (2008) (finding an interval of 2 to 3 months sufficiently close to satisfy the timing element of the knowledge/timing test); *Pasley v. Department of the Treasury*, 109 M.S.P.R. 105, ¶¶ 19-20 (2008) (finding the knowledge/timing test satisfied when the appellant's supervisor gave him a poor performance evaluation after learning of his disclosure).

The appellant's election to grieve his performance evaluation divests the Board of jurisdiction over that personnel action.

¶12    Under 5 U.S.C. § 7121(g), an individual who is covered by a collective bargaining agreement and who believes that he has suffered reprisal for making protected disclosures may elect not more than one of three remedies: (1) an appeal to the Board under 5 U.S.C. § 7701; (2) a grievance filed pursuant to the provisions of the negotiated grievance procedure; or (3) the procedures for seeking corrective action from OSC. *McCarty v. Environmental Protection Agency*, 105 M.S.P.R. 74, ¶ 10 (2007). An employee shall be considered to have elected the negotiated grievance procedure if he timely filed a grievance in writing in accordance with the parties' negotiated procedure. *Id*. Whichever remedy is sought first is deemed an election of that procedure and precludes pursuing the matter in either of the other two fora. *Scalera v. Department of the Navy*, 102 M.S.P.R. 43, ¶ 9 (2006).

¶13    We find that the appellant elected to grieve his fiscal year 2013 performance evaluation, thereby foreclosing the Board's jurisdiction over that personnel action. *See Giove v. Department of Transportation*, 89 M.S.P.R. 560,

¶ 10 (2001) (under section 7121(g), the Board lacks jurisdiction over the appeal of an employee who timely elected a negotiated grievance procedure), *aff'd*, 50 F. App'x 421 (Fed. Cir. 2002). Specifically, on November 18, 2013, December 30, 2013, and March 4, 2014, he filed grievances regarding his fiscal year 2013 evaluation. IAF, Tab 6 at 8, Tab 7 at 7. These filings were all prior to the appellant's June 11, 2014 OSC whistleblower complaint. IAF, Tab 1 at 13-19. Therefore, no matter on which of these dates the agency completed the performance evaluation, it is undisputed that the appellant first filed a grievance of that personnel action under negotiated grievance procedures.

¶14       On review, the appellant admits that he grieved the performance evaluation before he filed his complaint with OSC. PFR File, Tab 1 at 8. He argues, however, that this did not constitute an election of remedies for purposes of 5 U.S.C. § 7121(g) because he did not raise whistleblower reprisal as an issue in his grievance.[6] PFR File, Tab 1 at 9. We disagree. The Board has not interpreted 5 U.S.C. § 7121(g) to allow an employee to escape the election requirement by basing his case in various fora on different theories. Rather, the Board looks to the forum in which the personnel action was first challenged, under whatever theory, to determine which election the employee made. *See, e.g.*, *Delaney v. U.S. Agency for International Development*, 80 M.S.P.R. 146, ¶ 9 (1998) (the Board lacks jurisdiction over an appeal from a personnel action if the affected employee already has elected to challenge that action through another means under a statute requiring an election of just one avenue of redress); *Peltier v. Department of Justice*, 79 M.S.P.R. 674, ¶ 13 (1998) (same).

---

[6] The appellant also appears to argue that his grievances challenged the performance evaluation processes and procedures, whereas his whistleblower complaint challenged his final rating. PFR File, Tab 1 at 8-9. We find that this is a distinction without a difference because the appellant, in both cases, ultimately sought to change his rating. *Id.* at 8; IAF, Tab 1 at 16.

¶15      Under a similar election provision in 5 U.S.C. § 7121(d), the Board found that, even when an appellant's prior grievance did not contain a discrimination claim, his filing of the grievance still constituted an election of remedies for purposes of that provision. *Jones v. Department of Justice*, 53 M.S.P.R. 117, 119-20, *aff'd*, 983 F.2d 1088 (Fed. Cir. 1992) (Table); *see generally Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶¶ 13-16 (2013) (noting the similarity between the election provisions of 5 U.S.C. § 7121, subsections (d), (e), and (g)). Like 5 U.S.C. § 7121(d), 5 U.S.C. § 7121(g) provides that "[a]n aggrieved employee affected by a prohibited personnel practice" covered under this subsection may elect only one remedy. Both subsections list the applicable menu of remedies, and both provide that the timely filing of a grievance is an election of that forum. 5 U.S.C. § 7121(d), (g)(4)(B). There is no basis for us to interpret subsection (g) any differently than the Board interpreted subsection (d) in *Jones*. We find that, for purposes of 5 U.S.C. § 7121(g), an employee may be deemed to have elected a remedy regardless of whether he raised a prohibited personnel practice in his filing. The operative question is not which prohibited personnel practices, if any, the employee raised in his first filing, but rather which personnel actions he challenged. To allow a single personnel action to be challenged in multiple fora under different theories would undermine the benefits of consistency and administrative efficiency that the election provisions provide.

¶16      The appellant also alleges that he did not conclude that he was being retaliated against for whistleblowing until after he filed his Step III grievance of his January 30, 2014 performance evaluation, when he suffered further mistreatment by management. PFR File, Tab 1 at 9; IAF, Tab 6 at 7. We find that the factual circumstances underlying the appellant's whistleblower complaint were present and known to him when he elected to grieve his performance evaluation. *See* IAF, Tab 8 at 18. The subsequent events that prompted the appellant's belated conclusion that he had been subjected to whistleblower reprisal do not invalidate his prior election.

¶17    Finally, we note that, for an election of a grievance process under 5 U.S.C. § 7121(g) to be valid, the grievance must have been timely filed. 5 U.S.C. § 7121(g)(3)(B), (4)(B). Although the agency denied the appellant's grievance in part as untimely, it nevertheless reached the merits of the grievance and denied it on substantive grounds as well. ID at 7; IAF, Tab 6 at 5-6, 11-12, Tab 7 at 5. Under these particular circumstances, we find that the agency effectively waived the timeliness issue and that, notwithstanding the grievance's purported untimeliness, the appellant made a valid election. *See Smith v. Alvarez*, 898 F. Supp. 2d 1057, 1062-63 (N.D. Ill. 2012) (finding that the exhaustion requirements of the Prison Litigation Reform Act of 1996 were met where the jail administration made substantive rulings on the merits of the plaintiff's prison grievance at each stage of review, effectively waiving the deadline); *Continental Illinois National Bank & Trust Co. of Chicago v. United States*, 39 F. Supp. 620, 623-24 (Ct. Cl. 1941) (by considering and deciding upon a claim for refund prematurely filed before payment of tax, the Commissioner of Internal Revenue effectively waived any objection which might have been made to its premature filing).

The appellant made a nonfrivolous allegation that his disclosure was a contributing factor in the agency's decision not to grant him a cash award.

¶18    The appellant alleged before OSC and the administrative judge that the agency's decision not to grant him a cash award for fiscal year 2013 was the product of whistleblower reprisal, but the administrative judge did not address this claim in her initial decision. IAF, Tab 1 at 5, 16. The appellant renews his claim on review. PFR File, Tab 1 at 7. A decision regarding a cash award is a personnel action. 5 U.S.C. § 2302(a)(2)(A)(ix); *see Hagen v. Department of Transportation*, 103 M.S.P.R. 595, ¶ 13 (2006) (finding that an agency's denial of a cash award given to other employees was a personnel action).

¶19    The appellant has alleged that his supervisors had discretion to grant him this award. PFR File, Tab 4 at 9. Further, the Standard Form 50 processing what

appears to be a time-off award for the appellant's fiscal year 2013 performance reflects an approval date of December 16, 2013.  IAF, Tab 15 at 31.  We find that the appellant has made a nonfrivolous allegation that his disclosure was a contributing factor in the agency's decision not to grant him a cash award.  *See Jessup v. Department of Homeland Security*, [107 M.S.P.R. 1](#), ¶ 10 (2007) ("nonfrivolous allegation" is a low standard of proof and requires only a minimally sufficient showing).  The record does not reveal how performance awards at the agency are calculated, whether there is any discretion involved, or whether the calculation is based purely on the performance rating.  In other words, it is not clear whether a decision about the appellant's performance rating predetermined a decision about any cash award for which he might have been eligible.  Even if the agency's decision about the appellant's fiscal year 2013 performance rating was final prior to November 7, 2013, its decision about the cash award may not have been.  In any event, we lack sufficient evidence to conclude that the performance evaluation was final prior to November 7, 2013.  *See supra* ¶ 11.  We therefore find that the appellant has made a nonfrivolous allegation through the knowledge/timing test that his disclosure was a contributing factor in the agency's decision not to grant him a cash award.[7]

The record is not clear as to whether the appellant made a valid election to grieve the agency's decision not to grant him a cash award.

¶20        On review, the appellant argues that he did not receive a cash award after his numerical rating for fiscal year 2013 improved in his January 30, 2014 evaluation.  PFR File, Tab 1 at 7.  In his March 4, 2014 Step I grievance of the evaluation, the appellant did not challenge the agency's decision not to grant him a cash award.  IAF, Tab 7 at 7.  He raised the issue for the first time in his Step II

---

[7] In light of this finding, we do not address the appellant's additional allegations that he offers to meet this burden.  PFR File, Tab 1 at 10-11.  On remand, the appellant may have an opportunity to present evidence to meet his burden to prove contributing factor and to rebut the agency's defense.

grievance, filed on April 8, 2014, when he requested relief in the form of "a year-end bonus/award for 2013 no less than the bonus/award [he] received at the end of 2012." IAF, Tab 6 at 13. Although the Step II and III grievance decisions acknowledged the appellant's request, neither of them addressed the substance of the issue. *Id*. at 4-6, 11-12.

¶21 Neither the parties, nor the administrative judge, addressed the issue of whether the appellant properly challenged the denial of a cash award through the negotiated grievance process, and we lack sufficient information to make a finding on the issue at this stage of the appeal. For instance, the record does not contain a copy of the relevant provisions of the collective bargaining agreement, and we do not know whether the agreement prevents new issues from being raised for the first time during Step II. It also appears that the appellant may have been untimely with this issue to the extent that he filed his Step II grievance more than 35 days after the date of the agency's decision. IAF, Tab 6 at 13, Tab 15 at 31. If the appellant did not timely and properly raise this issue in his grievance, he cannot be said to have made an election to grieve it for purposes of 5 U.S.C. § 7121(g). *See* 5 U.S.C. § 7121(g)(4)(B); *McCarty*, 105 M.S.P.R. 74, ¶ 10.

We provide the following guidance for the administrative judge on remand.

¶22 The first issue to be decided on remand is whether the appellant made a binding election under 5 U.S.C. § 7121(g) to grieve the agency's denial of a cash award.[8] To answer this question, the administrative judge will need to determine whether the appellant timely and otherwise properly raised the issue in the negotiated grievance process.

---

[8] This issue should be addressed first because it is jurisdictional in nature, and the appellant has otherwise established jurisdiction over his appeal. *See Schmittling v. Department of the Army*, 219 F.3d 1332, 1336-37 (Fed. Cir. 2000) (finding that, in an IRA appeal, the Board may not assume that the appellant has established jurisdiction over his appeal, and then proceed to reject his whistleblower reprisal claim on the merits; rather, the Board must first address the matter of jurisdiction before proceeding to the merits of the appeal).

¶23    If the administrative judge finds that the appellant did not elect to grieve the cash award decision, then she should grant the appellant his requested hearing and decide whether he proved by preponderant evidence that his disclosure was protected and that it was a contributing factor in the cash award denial.  *See* 5 U.S.C. § 1221(e)(1); *Mattil v. Department of State*, 118 M.S.P.R. 662, ¶ 11 (2012).  Relevant factors include whether the performance evaluation was final on November 1, 2013, and was merely awaiting implementation, or became final at a later date; and whether performance awards were automatic based on the rating, or discretion was involved.  If the appellant proves his prima facie case, then the administrative judge should determine whether the agency proved by clear and convincing evidence that it would have made the same cash award decision even in the absence of the appellant's disclosure.  *See* 5 U.S.C. § 1221(e)(1)-(2); *Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶ 12 (2011).

## ORDER

¶24    We remand this appeal to the regional office for further adjudication in accordance with this Opinion and Order.

FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.