# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD

SAID I. HAKKI,

      Appellant,

        v.

DEPARTMENT OF
  VETERANS AFFAIRS,

      and,

DEPARTMENT OF STATE[1]

      Agencies.

DOCKET NUMBER
AT-1221-10-1043-W-3

DATE: March 18, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[2]

Bruce J. Sperry, Plant City, Florida, for the appellant.

Anne Joyce, Esquire, and Hollin Luh, Washington, D.C., for the
    Department of State.

Dana C. Heck, Esquire, St. Petersburg, Florida, for the Department of
    Veterans Affairs.

---

[1] The Department of Veterans Affairs is the appellant's former employing agency and was originally the sole respondent agency in this individual right of action appeal. *See Hakki v. Department of Veterans Affairs*, MSPB Docket No. AT-1221-10-1043-W-1, Initial Appeal File (W-1 IAF), Tab 3, Tab 5, Subtab 4oo. The administrative judge joined the Department of State (DOS) as a respondent agency based on the appellant's allegations that several of the personnel actions at issue in this appeal were influenced by recommendations made by DOS employees who were motivated to retaliate against him based on his whistleblower activity. W-1 IAF, Tab 33.

[2] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. Generally, we grant petitions such as this one only when:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review.  Except as expressly MODIFIED by this Final Order to address whether the appellant met the contributing factor jurisdictional element of his IRA appeal, despite his failure to satisfy the knowledge/timing test for contributing factor, we AFFIRM the initial decision.

**BACKGROUND**

¶2      The appellant was employed as a physician with the Department of Veterans Affairs (DVA) at its Bay Pines, Florida Medical Center.  *Hakki v. Department of Veterans Affairs*, MSPB Docket No. AT-1221-10-1043-W-1, Initial Appeal File (W-1 IAF), Tab 5, Subtab 4oo.  In March 2003, DVA granted him leave without

pay (LWOP) so that he could assist the Department of Defense with the development of Governmental structures in Iraq. *Id*., Subtabs 4kk, 4*ll*. In May 2004, he was named president of the Iraqi Red Crescent Society (IRCS).[3] W-1 IAF, Tab 1 at 22-23. On March 6, 2007, DVA extended the appellant's LWOP through December 31, 2008. W‑1 IAF, Tab 5, Subtab 4ee.

¶3 In 2008, various events occurred that affected the appellant's tenure as president of the IRCS. In January of 2008, the Iraqi Prime Minister's Office (PM) issued orders purporting to take over the IRCS; however, it withdrew those orders after the appellant filed a defamation lawsuit in March 2008. W-1 IAF, Tab 1 at 24. On July 7, 2008, the PM filed criminal charges against the appellant. *Id*.

¶4 In a July 25, 2008 letter, the appellant requested an extension of LWOP until December 31, 2010. W-1 IAF, Tab 1, Exhibit 4. On July 31, 2008, the PM issued an order dissolving the Administrative Committee of the IRCS. W-1 IAF, Tab 5, Subtab 4dd. The following day, DVA terminated the appellant's LWOP and directed him to report for duty at Bay Pines on August 4, 2008. *Id*., Subtab 4n at 64. The appellant did not return to duty and he filed a grievance on August 28, 2008, regarding the early termination of his LWOP. *Id*. at 63, 65-70. On September 26, 2008, DVA granted the appellant's grievance and restored his LWOP through December 31, 2008, *id*. at 89-90; however, on October 3, 2008, DVA issued a letter advising the appellant that it was rescinding his LWOP effective November 3, 2008, *id*. at 91. The appellant filed a grievance of that action. *Id*. at 96-101. On October 28, 2008, DVA granted the grievance and again restored the appellant's LWOP through December 31, 2008. *Id*. at 123‑24.

¶5 On December 19, 2008, the appellant requested LWOP through June 30, 2009. IAF, Tab 5, Subtab 4z. DVA denied his request on December 23, 2008, and directed him to return to duty effective January 2, 2009. *Id*., Subtab 4y. The

---

[3] The Red Crescent Society is roughly equivalent to the Red Cross in the United States.

appellant filed a grievance regarding this denial on December 31, 2008, and he did not return to duty. *Id*., Subtab 4x. DVA denied the grievance on January 28, 2009. *Id*., Subtab 4u. On June 22, 2009, the appellant requested LWOP for the period from July 1 through September 30, 2009. *Id*., Subtab 4n at 160‑61.

¶6 On July 8, 2009, DVA proposed removing the appellant for unauthorized absence on the grounds that he had been in an absent without leave (AWOL) status since January 2, 2009, due to his failure to report for duty. W-1 IAF, Tab 5, Subtab 4p. On September 29, 2009, while his proposed removal was pending, the appellant requested LWOP through December 31, 2009. W-1 IAF, Tab 17, Subtab 27. DVA sustained the charge and removed the appellant effective November 30, 2009. W-1 IAF, Tab 5, Subtabs 4e, 4f.

¶7 On December 4, 2009, the appellant filed a complaint with the Office of Special Counsel (OSC) alleging, among other things, that DVA denied or failed to respond to his LWOP requests and removed him in reprisal for whistleblowing. W-1 IAF, Tab 1 at 10. In his complaint, the appellant alleged that between 2006 and 2008, he made the following disclosures regarding medical and humanitarian issues in Iraq:

(1) In 2006, he disclosed to the health attaché at the U.S. Embassy in Iraq (Embassy) that expensive medical equipment and furniture that had been paid for by the Department of State (DOS) had been left outside exposed to the elements for many months.

(2) During meetings on July 31 and October 18 and 19, 2007, attended by DOS officials, he disclosed that the International Committee of the Red Cross (ICRC) was diverting funds and not spending funds in Iraq that had been provided by the U.S. for humanitarian projects in Iraq.

(3) In November 2007, he wrote a letter to the PM (with copies to the head of the Iraqi Parliament, the U.S. Ambassador to Iraq, and the Commander General of the Multi-National Forces in Iraq) disclosing that the ICRC had failed to spend 90% of the approximately $400 million provided for

humanitarian aid in Iraq, and he requested an investigation regarding the ICRC's diversion of funds.

(4) In weekly meetings during the fall of 2007 and early 2008 attended by DOS officials and Embassy employees, and in an October 19, 2007 meeting, he disclosed that various clinics built by the U.S. had been looted or destroyed.

(5) In meetings attended by a DOS official, he disclosed that he had submitted proposals for various projects in Iraq and that none of these projects was supported by the Embassy.

(6) In a December 5, 2007 meeting attended by various DOS officials, he disclosed gross mismanagement of 10 medical clinics by the Iraqi Ministry of Health.

*Id.* at 48-55.

¶8 After OSC closed its inquiry into his allegations, the appellant filed a timely IRA appeal with the Board. *Id*. at 7. On March 16, 2011, the administrative judge dismissed the appeal without prejudice so that the appellant could exhaust his administrative remedies with OSC regarding his additional claim that DVA had failed to grant his July 25, 2008 request for a 2-year extension of LWOP in reprisal for the purported disclosures he raised in his OSC complaint. W-1 IAF, Tab 34. After exhausting his remedies with OSC regarding that claim, the appellant refiled his IRA appeal with the Board. *Hakki v. Department of Veterans Affairs*, MSPB Docket No. AT-1221-10-1043-W-2, Appeal File (W‑2 AF), Tab 1. The appeal again was dismissed without prejudice on March 30, 2012, and was refiled on May 16, 2012, following the completion of court‑ordered mediation in a related case. W-2 AF, Tab 26; *Hakki v. Department of Veterans Affairs*, MSPB Docket No. AT-1221-10-1043-W-3, Appeal File (W-3 AF), Tab 1.

¶9 While the appeal was pending before the Board, the appellant filed a complaint with OSC on November 6, 2012, alleging that DVA's decision to

cancel his LWOP on August 1, 2008, and order for him to return to duty, and his subsequent removal were in reprisal for disclosing that the ICRC was "in cahoots" with al Qaeda in Iraq. W-3 AF, Tab 76 at 56-72. The appellant asserted that he made this disclosure in a July 18, 2007 letter to the president of the ICRC that was forwarded to DOS, and during a July 31, 2007 meeting attended by R.A., who worked at the Embassy and various other DOS officials. *Id*. at 70-71; *see id*. at 74-75. By letter dated June 28, 2013, OSC terminated its inquiry into the appellant's allegations. *Id*. at 82.

¶10     Without holding the requested hearing, the administrative judge dismissed the appeal for lack of jurisdiction. W-3 AF, Tab 82, Initial Decision (ID) at 1, 43. In his initial decision, the administrative judge found that the appellant proved by preponderant evidence that he exhausted his administrative remedies with OSC regarding his claim that his purported disclosures about the ICRC's alleged diversion of funds, the damage and looting of the U.S.-built medical clinics, the improper storage of medical equipment and furniture, and the various projects the IRCS had proposed to DOS were contributing factors in DVA's denial of his December 19, 2008 request for LWOP, DVA's failure to act on the appellant's LWOP requests of July 25, 2008, June 22, 2009, and September 29, 2009, and his removal.[4] ID at 18. In addition, the administrative judge found that the appellant established by a preponderance of the evidence that he exhausted his administrative remedies with OSC regarding his claim that his purported

---

[4] Regarding the appellant's claims that DVA retaliated against him for his disclosures by denying or failing to make a decision on his LWOP requests, the administrative judge explained that neither the Board, nor its reviewing court, have directly addressed the issue of whether the placement of an employee in an LWOP status constitutes a "personnel action" for the purposes of an IRA appeal. ID at 14. The administrative judge stated that, for the purpose of the jurisdictional analysis in this appeal, he would assume that the appellant raised a nonfrivolous allegation that DVA's denial of or failure to act on his various LWOP requests constituted failure to take a "personnel action" as that term is defined in the Whistleblower Protection Act. ID at 16. In light of our disposition of the petition for review in this appeal, we need not resolve this issue.

disclosure about the ICRC being "in cahoots" with al Qaeda in Iraq was a contributing factor in DVA's August 1, 2008 decision to cancel his LWOP, its order that he return to duty, and his removal.[5] *Id.*

¶11 The administrative judge also found that the appellant nonfrivolously alleged that the following purported disclosures were protected: the disclosure about the improper storage of medical equipment and furniture, ID at 20-22; the disclosure about the ICRC's alleged diversion of funds, ID at 22-23; the disclosure about the ICRC being "in cahoots" with al Qaeda in Iraq, ID at 23-24; and the disclosure about the looting and destruction of U.S.-built medical clinics in Iraq, ID at 25‑26.[6] The administrative judge further found, however, that the appellant failed to nonfrivolously allege that his protected disclosures were contributing factors in the personnel actions at issue in this appeal. ID at 26-43. Accordingly, the administrative judge dismissed the appeal for lack of jurisdiction. ID at 43.

¶12 The appellant has filed a petition for review of the initial decision. Petition for Review (PFR) File, Tab 1. DVA and DOS have filed a joint response to the petition for review. PFR File, Tab 4.

---

[5] The administrative judge noted, however, that prior to filing his OSC complaints, the appellant had filed grievances under the negotiated grievance procedures of the applicable collective bargaining agreement regarding the following actions: (1) the instructions DVA issued on August 1, 2008, purportedly cancelling the appellant's LWOP and directing him to report to work at Bay Pines on August 4, 2008; (2) DVA's October 3, 2008 letter rescinding the appellant's LWOP status effective November 3, 2008, and directing him to return to duty on that date; and (3) DVA's December 23, 2008 denial of the appellant's request for an additional 6 months of LWOP. ID at 18. The administrative judge explained that, pursuant to 5 U.S.C. § 7121(g)(2), once the appellant filed a written grievance in accordance with the parties' negotiated procedure, he was thereafter precluded from seeking corrective action from OSC. ID at 18-19. Therefore, the administrative judge found, despite the fact that the appellant established that he exhausted his administrative remedies with OSC regarding these three actions, he failed to establish that these actions fall within the Board's jurisdiction under the IRA provisions of 5 U.S.C. ch. 12, subch. III. ID at 19.

[6] The administrative judge found that the appellant failed to nonfrivolously allege that his purported disclosure regarding DOS's alleged failure to adopt the IRCS's project proposals was protected. ID at 19-20. The appellant has not challenged this finding on review and we discern no reason to disturb it.

## ANALYSIS

¶13    To establish Board jurisdiction over an IRA appeal, an appellant must establish that he exhausted his OSC remedies and nonfrivolously allege that: (1) he made a protected disclosure; and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action. *Sherman v. Department of Homeland Security*, 122 M.S.P.R. 644, ¶ 7 (2015); *Rusin v. Department of the Treasury*, 92 M.S.P.R. 298, ¶ 12 (2002). After establishing the Board's jurisdiction in an IRA appeal, the appellant then must establish a prima facie case of whistleblower retaliation by proving by preponderant evidence that he made a protected disclosure that was a contributing factor in a personnel action taken against him. 5 U.S.C. § 1221(e)(1); *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015). The appellant has the right to a hearing to meet this burden. *Peterson v. Department of Veterans Affairs*, 116 M.S.P.R. 113, ¶ 8 (2011). If the appellant makes out a prima facie case, then the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure.[7] 5 U.S.C. § 1221(e)(1)-(2); *Lu*, 122 M.S.P.R. 335, ¶ 7.

¶14    The central issue in this appeal is whether the appellant met his burden of nonfrivolously alleging that any of his purported disclosures were a contributing factor in any of the personnel actions at issue. Whether an appellant has presented nonfrivolous allegations is determined on the basis of the written record. *Kahn v. Department of Justice*, 528 F.3d 1336, 1341 (Fed. Cir. 2008).

¶15    To satisfy the contributing factor criterion at the jurisdictional stage of the case, the appellant need only raise a nonfrivolous allegation that the fact of, or

---

[7] All of the relevant events in this appeal that led to this appeal occurred before the December 27, 2012 effective date of the Whistleblower Protection Enhancement Act of 2012. Pub. L. No. 112-199, § 202, 126 Stat. 1465, 1476. Even if we were to apply that statute, however, the result in this appeal would be the same.

the content of, a protected disclosure was one factor that tended to affect the personnel action in any way. *Sherman*, 122 M.S.P.R. 644, ¶ 8. One way to establish this criterion is the knowledge/timing test, under which an employee may nonfrivolously allege that the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official who took the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.*

¶16     An appellant also may show that the protected activity was a contributing factor by proving that the official taking the action had constructive knowledge of the protected activity, even if the official lacked actual knowledge. *Nasuti v. Department of State*, 120 M.S.P.R. 588, ¶ 7 (2014). An appellant may establish constructive knowledge by demonstrating that an individual with actual knowledge of the disclosure influenced the official accused of taking the retaliatory action. *Id.*; *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 11 (2012). The Supreme Court has adopted the term "cat's paw" to describe a case in which a particular management official, acting because of an improper animus, influences an agency official who is unaware of the improper animus when implementing a personnel action. *See id.* (citing *Staub v. Proctor Hospital*, 562 U.S. 411, 415-16, 419-23 (2011) (applying a cat's paw approach to cases brought under the Uniformed Services Employment and Reemployment Rights Act of 1994)). If the appellant fails to satisfy the knowledge/timing test, the Board must consider other evidence, such as that pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether those individuals had a desire or motive to retaliate against the appellant. *Rumsey v. Department of Justice*, 120 M.S.P.R. 259, ¶ 26 (2013).

<u>The administrative judge correctly found that the appellant failed to nonfrivolously allege that any DVA official had actual knowledge of any of his disclosures.</u>

¶17    In determining if the appellant met his jurisdictional burden regarding the contributing factor element of his appeal, the administrative judge first considered whether the appellant alleged that any DVA official had actual knowledge of his disclosures. ID at 26. The administrative judge noted that the appellant did not allege that he made his disclosures to or in the presence of any DVA employee, nor did he allege that anyone with knowledge of his disclosures communicated the substance of the disclosures to any DVA official. *Id.* The appellant does not contest these findings on review. Therefore, we find that the administrative judge properly found the appellant failed to nonfrivolously allege that any DVA official involved in the decisions regarding his LWOP requests or his removal had actual knowledge of his disclosures. *Id.*

<u>The administrative judge correctly found that the appellant failed to nonfrivolously allege that his purported disclosure to the health attaché was a contributing factor in any of the personnel actions at issue.</u>

¶18    The administrative judge then considered whether the appellant nonfrivolously alleged that any of his disclosures were a contributing factor in the personnel actions at issue based upon a theory of constructive knowledge. Regarding the appellant's purported disclosure to the health attaché about the alleged improper storage of furniture and medical equipment, the administrative judge noted that the appellant did not allege that DOS transmitted any information provided by the health attaché to DVA in response to its requests for information about the appellant, nor did the appellant allege that he disclosed that furniture and equipment had been improperly stored to anyone other than the health attaché. ID at 27. Thus, the administrative judge found, the appellant failed to allege that any person with actual knowledge of the disclosure that the appellant made to the health attaché influenced any DVA employee involved in the decisions regarding the appellant's LWOP requests or his removal. *Id.* The

appellant does not challenge the administrative judge's finding that he failed to nonfrivolously allege that his disclosure to the health attaché was a contributing factor in the personnel actions at issue in this appeal, and we discern no reason to disturb this finding.

The appellant failed to nonfrivolously allege that his disclosures were a contributing factor in DVA's failure to grant his July 25, 2008 request for a 2‑year extension of LWOP.

¶19     The administrative judge then considered whether the appellant nonfrivolously alleged that any of his other purported disclosures were a contributing factor to DVA's failure to issue a decision regarding the appellant's LWOP requests of July 25, 2008, June 22, 2009, and September 29, 2009, and the appellant's removal. ID at 27-41. Regarding the appellant's July 25, 2008 LWOP request, the administrative judge found that, based on the appellant's allegations, it appears that beginning in late July or early August of 2008, DVA asked DOS for information about the appellant's status in Iraq for the purpose of deciding what actions to take regarding that request. ID at 29-30. The administrative judge further found that it appears that DVA relied on the information that DOS provided in deciding whether to grant the appellant's requests for LWOP. ID at 30; *see* ID at 29-38 (describing the communications between DVA and DOS regarding the appellant following his July 25, 2008 LWOP request).

¶20     However, the administrative judge found that, other than R.A., the appellant did not allege that any of the individuals to whom he made his disclosures were involved in submitting information to DVA regarding the appellant's status and activities in Iraq. ID at 38. As for the information that R.A. provided about the appellant, the administrative judge noted that during his deposition, R.A. indicated that he provided information to DOS official T.B. in response to DVA's questions regarding the appellant's status. ID at 30; *see* W-3 AF, Tab 76 at 73. The administrative judge also noted that on July 30, 2008, R.A. sent the following

reply to DOS employee M.S.'s July 29, 2008 email stating that she had shared with DVA the contents of a document that the Embassy had compiled about the appellant and had declined to offer DOS's support for the appellant's July 25, 2008 LWOP request:

> [The appellant] has arrest warrants against him in an expanding, major corruption investigation. His "leadership" has greatly damaged the effectiveness of the Iraqi Red Crescent. He has been using his "connections" to the [U.S. Government] to advance his interests in Iraq. [The appellant] has no role with USM-I. I believe that [M.S.] provided the right advice to the [DVA].

ID at 30; *see* W-3 AF, Tab 75 at 131. The administrative judge further noted that on September 16, 2008, R.A. sent T.B. and two other DOS employees an email stating that: several of the Red Crescent chapters met in Sulymaniah, Iraq, on September 15, 2008, to elect new leadership; the Washington Post was working on a story "on this whole saga" and had been in touch with the appellant the previous day; and the appellant maintained that Iraq had dropped all charges against him. ID at 32; *see* W-3 AF, Tab 75 at 135.

¶21    The administrative judge noted, moreover, that on September 30, 2008, R.A. sent the following email to T.B., who forwarded the contents of the email to DVA:

> We understand from ICRC that [the appellant] resigned after the first [Sulymaniah] meeting deemed him ineligible to run. Neither we nor our contacts have seen a letter and we are not in contact with the participants of the meeting. I have not seen this in print in the media.
>
> The main point is that [the appellant] had now been ousted twice. First by the [PM] in the letter forwarded earlier and second by a sub set of the membership in [Sulymaniah]. This is [unclassified] and has been in the media. So whether [the appellant] acknowledges his ouster or not, does not change the fact that he has been ousted— twice.

ID at 35; *see* W-3 AF, Tab 75 at 99, 101.

¶22    The administrative judge found that, although some of R.A.'s communications with other DOS employees were critical of the appellant and his

performance as president of the IRCS, and some of the information DOS provided DVA may not have been supportive of the appellant and his management of the IRCS, the appellant did not allege that the information DOS provided in response to DVA's requests for such information was other than the best, most accurate, and most comprehensive information it had available at the time. ID at 39. The administrative judge concluded that, given the absence of an allegation that DOS manipulated the information it provided DVA to cast the appellant in a more negative light than warranted by the actual information DOS had at its disposal, the appellant did not raise a nonfrivolous allegation that the factual information DOS provided DVA regarding his status influenced DVA's failure to grant his request for an extension of LWOP. *Id*. (citing *Aquino v. Department of Homeland Security*, 121 M.S.P.R. 35, ¶ 21 (2014), and *Staub*, 562 U.S. at 422).

¶23     The administrative judge also found, however, that DOS provided more than merely factual information to DVA regarding the appellant. ID at 39. In that regard, the administrative judge noted that M.S. apparently advised DVA in July 2008, that DOS would not support the appellant's request for an extension of LWOP, and T.B. apparently advised DVA in or around September 2008, that DOS did not consider the appellant's presence in Iraq as serving the interests of the U.S. Government. *Id*.; *see* W-3 AF, Tab 75 at 131, 138.

¶24     As to whether M.S. or T.B. knew of the appellant's purported disclosures, the administrative judge found that the record indicates that M.S. was aware of reports that the appellant had alleged that the ICRC was "up to no good" with al Qaeda in Iraq because she was copied on an email which asked whether the appellant had ever made such allegations. ID at 40 n.11; *see* W-3 AF, Tab 74 at 89-91. The administrative judge found, however, that in his OSC complaint regarding this disclosure, the appellant did not identify DVA's failure to approve his July 25, 2008 LWOP request as one of the personnel actions for which this disclosure was a contributing factor, and he did not allege that M.S. had actual knowledge of any of his other disclosures. ID at 40 n.11.

¶25    The administrative judge implicitly reasoned that, because the appellant did not exhaust his remedies with OSC regarding his claim that his disclosure about the ICRC "being in cahoots" with al Qaeda in Iraq was a contributing factor to the agency's decision not to grant his July 2008 LWOP request, and he did not allege that M.S. or T.B. had knowledge of his other disclosures, the appellant did not allege that M.S. or T.B. had actual knowledge of any of the disclosures for which he exhausted his administrative remedies with OSC regarding DVA's failure to approve his July 2008 LWOP request. ID at 39-40. Therefore, the administrative judge found, to the extent that the appellant's submissions might be viewed as alleging that M.S. or T.B. influenced DVA's decision regarding the appellant's July 2008 LWOP request by indicating that DOS could not support the request and did not consider the appellant's presence in Iraq as serving the interests of the U.S. Government, such allegations are insufficient to constitute a nonfrivolous allegation that DVA failed to grant the appellant's request for an extension of LWOP based on an official's constructive knowledge of the appellant's disclosures. ID at 40. Accordingly, the administrative judge concluded, the appellant failed to raise a nonfrivolous allegation of facts which, if proven, could establish that his protected disclosures were a contributing factor in DVA's failure to grant his July 2008 LWOP request. *Id*.

¶26    The appellant challenges this finding on review, arguing that the administrative judge erred in concluding that he failed to allege that the information DOS provided in response to DVA's requests for information about him was other than the best, most accurate, and most comprehensive information it had available at the time. PFR File, Tab 1 at 7. In support of this claim, the appellant asserts that DOS transmitted information to DVA that was not accurate when DVA relied on this information in deciding not to grant his July 2008 LWOP request. *Id*. at 5. More specifically, he contends that DVA relied on DOS's recommendation not to support his LWOP request in deciding not to respond to the request; however, when DOS notified DVA that it did not support

the appellant's July 25, 2008 LWOP request, the purported factual basis for DOS's position—the July 31, 2008 dissolution of the ICRC's governing Board by the PM—had not yet occurred. *Id*. at 6. Therefore, the appellant contends, the information that DOS provided DVA in furtherance of M.S.'s decision not to support the appellant's July 25, 2008 LWOP request was manipulated by presenting facts that had not yet occurred. *Id*. at 7. The appellant then reasons that, because the purported factual basis for DOS's decision not to support his LWOP request had not yet occurred when M.S. conveyed this decision to DVA, DOS knew at that time that there was no "legal basis" for its decision and the only "reasonable conclusion" is that DOS did not support his request in reprisal for his protected disclosures. *Id*. at 13.

¶27     We find this argument unpersuasive because it is based on a false premise; namely, that DOS's purported reason for not supporting the appellant's July 2008 LWOP request was the dissolution of the ICRC's governing board. Although M.S.'s July 29, 2008 email shows that DOS did not support the appellant's July 25, 2008 request even prior to the dissolution of the ICRC's governing board, W‑3 AF, Tab 75 at 131, there is no evidence that DOS ever informed DVA that the dissolution of the board was why it did not support the appellant's July 25, 2008 LWOP request. Based on our review of the record, we find that there is no evidence to support the appellant's contention that DOS manipulated the facts to provide DVA with a negative recommendation about his July 2008 LWOP request, nor is there any evidence indicating that the real reason for DOS's lack of support for his request was his protected disclosures.

¶28     We similarly find unavailing the appellant's argument on review that the information exchanged between R.A. and T.B. that was transmitted to DVA amounted to more than merely factual information about him. PFR File, Tab 1 at 11. The appellant does not offer any argument or evidence to support this bare assertion. His apparent contention that the information from R.A. that was conveyed to DVA through DOS employees included nonfactual information about

him thus constitutes mere disagreement with the administrative judge's explained findings and, as such, provides no reason to disturb the initial decision. *See Schnell v. Department of the Army*, 114 M.S.P.R. 83, ¶ 12 (2010) (stating that the appellant's allegations constituted mere disagreement with the administrative judge's explained factual findings and legal conclusions and therefore did not provide a basis for Board review).

¶29     The appellant further argues on review that the initial decision "acknowledged that [M.S.] and [T.B.] were made aware of the [a]ppellant's disclosures" yet "concludes that [the] [a]ppellant 'has not alleged that either [M.S.] or [T.B.] had actual knowledge of any of the disclosures . . . .'"  PFR File, Tab 1 at 9-10 (quoting ID at 39).  The appellant contends that M.S. was aware of the reports of his disclosures regarding al Qaeda and that T.B. "without question" was aware of his protected disclosures.  PFR File, Tab 1 at 10.

¶30     Contrary to the appellant's contention, the administrative judge did not acknowledge that T.B. was made aware of the appellant's disclosures, and the appellant does not submit any evidence or argument in support of his bare assertion that T.B. was aware of his disclosures.  Further, the initial decision did not find that the appellant failed to allege that either M.S. or T.B. had actual knowledge of any of the disclosures.  Rather, as previously noted, it acknowledged that it appeared that M.S. was aware that the appellant had reportedly alleged that ICRC was "in cahoots" with al Qaeda in Iraq, but found that the appellant did not exhaust his administrative remedies before OSC regarding his claim that this disclosure was a contributing factor in DVA's failure to grant his July 2008 LWOP request, *see* ID at 40 n.11, and that the appellant failed to allege that either M.S. or T.B. had actual knowledge of any of the disclosures for which he had exhausted his administrative remedies with OSC regarding DVA's failure to approve his request for a 2-year extension of LWOP, ID at 39‑40.

¶31    As for M.S.'s knowledge of the appellant's other disclosures, the appellant argues on review that M.S.'s statement in her July 29, 2008 email to DVA that "the Sakki saga continues" reflects that she was aware of his disclosures. PFR File, Tab 1 at 9 n.4; *see* W-3 AF, Tab 75 at 131. The appellant has not cited any evidence to support his bare assertion that M.S. was referring to the appellant's disclosures when she used the term "saga," nor is there any evidence indicating that M.S. was aware of any disclosure other than the appellant's allegations regarding al Qaeda in Iraq.

¶32    On review, the appellant also challenges the administrative judge's finding that, when he filed his OSC complaint regarding the disclosure that the ICRC was "in cahoots" with al Qaeda in Iraq, he did not allege that this disclosure was a contributing factor in DVA's failure to approve his July 2008 request for an extension of LWOP. PFR File, Tab 1 at 8-9; *see* ID at 40 n.11. The appellant asserts that, in making this finding, the administrative judge failed to acknowledge that, in the complaint in question, the personnel actions that he claimed were taken in reprisal for this disclosure included all agency actions since "July 2008 and thereafter," and not merely the August 1, 2008 cancellation of his LWOP. PFR File, Tab 1 at 8-9, *see* W-3 AF, Tab 76 at 61. The appellant contends that, because the cancellation of his LWOP did not occur until August 1, 2008, the July 2008 date was intended to include DVA's July 2008 decision not to act upon his request for a 2-year extension of LWOP. PFR File, Tab 1 at 9 n.3.

¶33    Based on our review of the record, we agree with the administrative judge that the appellant did not allege before OSC that DVA's failure to approve his July 25, 2008 LWOP request was one of the personnel actions that was taken in reprisal for his purported disclosure that the ICRC was "in cahoots" with al Qaeda in Iraq. In the November 6, 2012 OSC complaint in which the appellant raised this disclosure, he clearly stated that the agency canceled his LWOP on August 1, 2008, and subsequently removed him in reprisal for this disclosure. W‑3 AF, Tab 76 at 72. Significantly, however, he did not clearly allege before

OSC that DVA failed to act on his July 25, 2008 request for LWOP in reprisal for this disclosure.[8]  Consequently, the administrative judge properly found that the appellant did not exhaust his administrative remedies before OSC regarding his claim that DVA failed to grant his July 2008 LWOP request in retaliation for his disclosure that the ICRC was "in cahoots" with al Qaeda in Iraq.  ID at 40 n.11; *see Coufal v. Department of Justice*, 98 M.S.P.R. 31, ¶ 14 (2004) (explaining that, to meet the exhaustion requirement, the appellant must articulate with reasonable clarity and precision before OSC the basis of her request for corrective action).  Accordingly, we discern no reason to disturb the administrative judge's finding that the appellant failed to nonfrivolously allege that his protected disclosures were a contributing factor in DVA's failure to grant his July 2008 LWOP request.  ID at 40.

The administrative judge correctly found that the appellant failed to nonfrivolously allege that any of his purported disclosures were a contributing factor in the remaining personnel actions at issue in this appeal.

¶34	Turning to the issue of whether the appellant nonfrivolously alleged, based on a constructive knowledge theory, that his protected disclosures were a contributing factor in the agency's removal action and the failure to grant his June 22 and September 29, 2009 requests for LWOP, the administrative judge considered the communications between DOS and DVA relevant to each of these personnel actions.  ID at 40-41.  Regarding the appellant's June 22, 2009 LWOP request, *see* W-1 IAF, Tab 5, Subtab 4n at 160-61, the administrative judge noted that the Bay Pines Medical Center's Acting Human Resources Officer issued a brief dated June 23, 2009, and updated on June 24 and July 6, 2009, which states as follows:  there was an Iraqi arrest warrant for the appellant for misappropriation of funds while he served as president of the IRCS; and DOS had informed DVA that the Government of Iraq had recently filed an extradition

---

[8] In contrast, in his January 28, 2011 OSC complaint, the appellant specifically alleged that the agency failed to act on his July 2008 LWOP request in reprisal for his other disclosures.  W-2 AF, Tab 1 at 37‑38.

request for the appellant with DOS. ID at 37-38, 41; *see* W-3 AF, Tab 76 at 219. The administrative judge found that the appellant did not allege that DOS misled DVA concerning his status with the IRCS, nor did he allege that the information DOS may have provided DVA regarding the arrest warrant and the extradition request was inaccurate or provided by DOS employees with actual knowledge of the appellant's disclosures. ID at 41. Based on the analysis he applied in finding that the appellant failed to nonfrivolously allege that his disclosures were a contributing factor in DVA's failure to grant his July 2008 LWOP request, the administrative judge found that the appellant failed to nonfrivolously allege that the DVA officials who failed to grant the appellant's June 22, 2009 request for LWOP for the period from July 1 to September 30, 2009, had actual or constructive knowledge of his disclosures. *Id.* Therefore, the administrative judge found, the appellant failed to nonfrivolously allege that his disclosures were a contributing factor in DVA's failure to grant his June 22, 2009 request for LWOP. *Id.* The appellant does not specifically challenge this finding on review and we discern no reason to disturb it.

¶35     Regarding the appellant's September 29, 2009 LWOP request, W-1 IAF, Tab 17, Exhibit 27, the administrative judge noted that the record does not contain any evidence indicating that DVA had any communications with DOS regarding this LWOP request. ID at 41. The administrative judge correctly found that, in the absence of any allegation that DVA received additional input from DOS regarding the appellant's September 29, 2009 request for LWOP, the appellant failed to nonfrivolously allege that his disclosures were a contributing factor in DVA's failure to grant this request. ID at 41.

¶36     As for the appellant's removal, the administrative judge noted that the appellant did not allege that DVA consulted any DOS employee regarding the decision to remove him. ID at 41-42. The administrative judge found that the appellant's claims concerning his removal are intertwined with his claims regarding DVA's failure to grant his LWOP requests because the dates covered

by his July 2008 LWOP request include the time period during which he was charged as AWOL. ID at 42. The administrative judge explained that, if the appellant had established that DVA would have granted his requests for LWOP during the AWOL period but for his protected disclosures, he also would have established that his disclosures were a proximate cause for his removal, because DVA could not have properly charged him as AWOL during a period when he was in an approved leave status. *Id.*; *see, e.g.*, *Willis v. Department of Defense*, 105 M.S.P.R. 466, ¶ 19 (2007) (finding that an AWOL charge may not be sustained without evidence that an employee was absent and that his absence was not authorized or that his request for leave was properly denied). The administrative judge correctly found that, given the appellant's failure to nonfrivolously allege that his protected disclosures were a contributing factor in DVA's failure to grant his request for a 2-year extension of LWOP, and the absence of any allegation that an individual with actual knowledge of the appellant's protected disclosures influenced DVA regarding the removal decision itself, the appellant failed to nonfrivolously allege that his protected disclosures were a contributing factor in DVA's decision to remove the appellant. ID at 42.

We modify the initial decision to address whether the appellant met the contributing factor jurisdictional element of his IRA appeal notwithstanding his failure to satisfy the knowledge/timing test.

¶37     In sum, we agree with the administrative judge that the appellant failed to satisfy the knowledge prong of the knowledge/timing test for contributing factor under a theory of either actual or constructive knowledge. As previously noted, however, if an appellant fails to satisfy the knowledge/timing test, the Board must consider other evidence, such as that pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was directed personally at the proposing or deciding official, and whether those individuals had a desire or motive to retaliate against the appellant. *Rumsey*, 120 M.S.P.R. 259, ¶ 26. Accordingly, we also have considered these factors in

assessing whether the appellant met his jurisdictional burden regarding the contributing factor element of his appeal.

¶38      Based on our review of the record, we find that the agency had very strong reasons for denying the appellant's LWOP requests and for removing him for unauthorized absence when he refused to return to duty following the expiration of his LWOP at the end of 2008. The Board has held that the question of granting LWOP to an employee is totally within the agency's discretion. *Thomas v. Department of the Army*, 23 M.S.P.R. 483, 484 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985). At the time of the personnel actions at issue in this appeal, the appellant had been in an LWOP status for more than 5 years. Given the events of 2008 involving the appellant and the PM, DVA acted within its discretion in finding that LWOP was no longer warranted and that the appellant should return to his position as a physician at the Bay Pines Medical Center. Moreover, the appellant's disclosures were not directed personally at the proposing or deciding official, nor is there any evidence that those individuals had a desire or motive to retaliate against the appellant. Therefore, we agree with the administrative judge that the appellant failed to satisfy the contributing factor jurisdictional element of his IRA appeal, and the appeal must be dismissed for lack of jurisdiction.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline

and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.  The court of appeals must receive your petition for review within 60 days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  You may choose to request review of the Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both.  Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode/htm.  Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.  Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for your appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at

http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:            _____
                          William D. Spencer
                          Clerk of the Board

Washington, D.C.